**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert NICHOLSON,
Defendant-Appellant.**

**No. 81–1104.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1981.

Decided May 10, 1982.

---

Jack R. Blumenfeld, Magazine & Blumenfeld, Coconut Grove, Fla., for defendant-appellant.

Kenneth C. Bauman, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before ANDERSON and POOLE, Circuit Judges, and KELLEHER,* District Judge.

KELLEHER, District Judge:

Robert Nicholson appeals his convictions for conspiracy to possess marijuana with the intent to distribute, 21 U.S.C. § 846, and conspiracy to import marijuana in violation of 21 U.S.C. § 952(a). Since we find no merit in appellant's contention that he did not "knowingly" invest $20,000 in a scheme to import marijuana, the judgments are affirmed in all respects.

The original indictment charged the appellant-defendant, Robert Nicholson, with participation in a large conspiracy to import marijuana from Thailand into the United States. Nicholson was named in four of the ten counts of the indictment. He was charged with conspiracy to possess marijuana with the intent to distribute (Count I), conspiracy to import marijuana (Count II), and the corresponding substantive offenses (Counts III and IV). His trial, which was severed from that of his co-defendants, began on December 10, 1980 before United States District Judge Helen J. Frye of the District of Oregon. At the close of the government's case, the appellant moved for a judgment of acquittal on all counts. This motion was granted on the substantive counts, but not on the conspiracy counts. At the close of all the evidence, the appellant again moved for a judgment of acquittal on the conspiracy counts. This motion

was denied. The judge then instructed the jury and submitted the case to them. The instructions included the "deliberate ignorance" standard set forth in *Jewell* [532 F.2d 697 (9th Cir. 1976)]: Appellant's objection to this instruction was overruled. Nicholson was found guilty of both conspiracies, and was sentenced to five years of probation on each count. The sentences are to run concurrently. Appellant's subsequent motion for a new trial was denied. This appeal follows.

*Facts*

There is little dispute as to the underlying facts. Appellant concedes the existence of the conspiracies to import and distribute marijuana. He also does not dispute that, in late May or early June of 1977, he gave $20,000 in cash to Robert A. Rankin and Scott Emlong, both self-confessed members of these conspiracies. Finally, he agrees that Mr. Rankin and Mr. Emlong collected the money with the intent to further these conspiracies.

Nicholson's sole connection with the conspiracies relates to his $20,000 investment with Rankin. Rankin became involved with the conspiracies in April of 1977, when he was offered an eight-to-one or ten-to-one return for any money he invested.

In May of 1977, in Boston, Massachusetts, Peter Ledwell, a friend of Nicholson, introduced him to Rankin. After the two had become friendly, Rankin asked Nicholson if he would like to invest in a "business venture." Rankin had previously made a similar offer to Ledwell, who invested $35,000 in cash. (Ledwell was named as a co-defendant in the indictment with Nicholson, but died prior to trial.)

Rankin told Nicholson that he "was not at liberty to tell him what the money was being invested for." Although Nicholson admitted that he knew Rankin and Ledwell had been in the marijuana smuggling business, he testified that he did not ask Rankin how his $20,000 was to be used. Several

---

* Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation.

co-conspirators testified that this reflected a common practice in the illegal drug business. One does not ask questions, they testified, since one does not want to know the answer. Nicholson testified that he did later ask Ledwell about whether Rankin intended to use the money in a marijuana deal. Ledwell reassured him, he said, that if the money was to be used in a marijuana deal, Rankin would have told him so.

Nicholson's investment with Rankin was made in two $10,000 payments. For the first $10,000, he was offered a three-to-one return in six months to a year, plus a boat Rankin said was worth $10,000 as collateral. (Rankin testified that such collateralization is rare in the illegal drug business.) At about 10:00 p. m. in late May or early June of 1977, Nicholson delivered this first $10,-000 to Rankin in cash in a brown paper bag. This money was given to Rankin in Boston on one hour's notice. The second $10,000 was delivered sometime later to Scott Emlong on Cole Island, Massachusetts. Emlong collected the money for Rankin. Rankin had offered Nicholson a five-to-one return in six months to a year on this second investment, since he could not give any collateral. Of the $20,000 invested by Nicholson, $5,000 was his own money and $15,-000 came from his father.

In July, 1977, Rankin informed Nicholson that the deal had "gone bad" and that "everything was off." Nicholson received the boat which had been used as collateral from Rankin, and later sold it for $6,000. Although he and his father had lost $14,000 on their investment, Nicholson testified that he never asked Rankin what the money had been used for or what had happened to turn the deal sour. At no time did he ever question Rankin or Emlong about the nature of this venture. Rankin testified that Nicholson never asked him for any documentation, despite the fact that Nicholson stated that he barely had enough money to live. According to Nicholson, he did not discover that the $20,000 was used in a marijuana deal until sometime in 1978, about a year after the deal had collapsed.

Two issues are presented for this Court's review. We conclude that none of the asserted errors warrants reversal, and accordingly, affirm appellant's conviction. We now proceed to discuss both issues raised.

*Sufficiency of the Evidence of Knowing Participation*

Appellant makes two arguments that the evidence of his knowing participation in the conspiracies was insufficient to support the trial court's denial of his motion for acquittal and its submission of this issue to the jury. The standard of review for such a challenge is identical to the standard the trial judge applied in ruling on the motion. *United States v. Anderson*, 532 F.2d 1218, 1223 (9th Cir. 1976); *United States v. Price*, 623 F.2d 587, 591 (9th Cir. 1980). "The court must be 'satisfied that the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion' that the defendant is guilty as charged." *United States v. Anderson*, supra, at 1223, quoting *United States v. Leal*, 509 F.2d 122, 125 (9th Cir. 1975); *United States v. Price*, supra, at 591. The evidence must be considered in the light most favorable to the verdict. *Id.* It must be sufficiently persuasive that a jury could reasonably find the defendant guilty beyond a reasonable doubt. *United States v. Price*, supra, at 591. In making this inquiry, the court must not substitute its judgment for the jury's. It is not necessary that the court itself could find the defendant guilty. Rather, it is sufficient if a reasonable jury could come to this conclusion.

Appellant first argues that the surrounding circumstances of his investment with Rankin demonstrate that there was insufficient evidence of his knowing participation in the conspiracies. Nicholson points out that the use of collateral, Rankin's discouragement of questions as to the nature of the undisclosed "business venture," and Ledwell's alleged assurances to Nicholson that the money would not be used in a drug deal all indicate that he was not investing in marijuana smuggling. Appellant cites *United States v. Bailey*, 607 F.2d 237 (9th

Cir. 1979) as supporting this argument. He contends that the evidence in *Bailey* was more substantial than in this case, yet was still insufficient to support a finding of knowing participation in a conspiracy to distribute narcotics.

■ An examination of the evidence in a light most favorable to the verdict, however, clearly establishes that there was sufficient evidence of appellant's knowing participation in these conspiracies to justify submitting this issue to the jury. The facts which Nicholson argues indicate that he was not investing in a drug smuggling operation provide strong evidence to the contrary. While the use of collateral may well be uncommon in the drug business, the other circumstances of this case would have made any reasonable person suspect that the undisclosed "business venture" was illegal. Rankin's refusal to describe how the $20,000 was to be invested, Rankin's and Ledwell's known drug dealing history, the extremely high return promised on the investments, and the lack of any documentation all would have caused any reasonable person to at least suspect the deal was illegal. Moreover, the requirement that the money be delivered at night in cash in a brown paper bag on one hour's notice should have resolved any doubts Nicholson had that further inquiry as to the legality of this deal was needed.

Appellant contends, however, that he asked Ledwell whether the money would be used in a marijuana deal and was assured that it would not. The only evidence of this contention was Nicholson's own self-serving testimony. (Ledwell could not corroborate it since he died prior to trial.) Even if one believes his testimony, this inquiry was woefully inadequate under the circumstances. Nicholson relied on the assurances of one person he knew to be a drug dealer, Ledwell, that another person he also knew to be a drug dealer, Rankin, would have told Nicholson if the undisclosed "business venture" was a marijuana deal. Given Rankin's ardent refusal to answer any questions about this highly suspicious venture, these second-hand assurances from a questionable source would not have satisfied a reasonable person as to the legality of the deal.

■ Furthermore, a reasonable jury could have easily chosen to disbelieve Nicholson's self-serving uncorroborated testimony. As this court held in *United States v. Cisneros*, 448 F.2d 298 (9th Cir. 1971):

> A trier of fact is not compelled to accept and believe the self-serving stories of vitally interested defendants. Their evidence may not only be disbelieved, but from the totality of the circumstances, including the manner in which they testify, a contrary conclusion may be properly drawn. *Id.* at 305.

Such a finding of untruthfulness can be considered "... positive evidence of the opposite to which he [the defendant] testified." *United States v. O'Looney*, 544 F.2d 385, 391 (9th Cir. 1976). In this case, the jury could reasonably have disbelieved Nicholson's testimony that he received and relied on Ledwell's assurances and that he did not know that his money would be used in a drug smuggling conspiracy.

Appellant's citation to *United States v. Bailey, supra*, is inapposite and distinguishable. *Bailey* held that the mere isolated purchases of narcotics from a single member of a large conspiracy to distribute narcotics was not sufficient evidence to connect the purchaser directly or circumstantially with the larger conspiracy. *Id.* at 245. In contrast, while Nicholson only had contacts with a few co-conspirators, his investment was to be used to finance the overall scheme. Thus, the evidence presented was sufficient to connect him both directly and circumstantially with the conspiracies.

■ The defendant-appellant's second major argument is that the evidence is insufficient to show a "meeting of the minds" between himself and the other conspirators. He contends that *United States v. Peterson*, 549 F.2d 654 (9th Cir. 1977) commands this conclusion. In *Peterson*, evidence that several airplanes used to haul marijuana had been purchased in the name of the defendant was held to be insufficient to establish

his knowing participation. The court found that there had been no "meeting of the minds" between the defendant and the other conspirators. Although the defendant in *Peterson* had met several times with the conspirators, these meetings involved discussions of "legitimate business ventures." Nicholson argues that the evidence against him also consisted of discussions with conspirators on only "legitimate business ventures."

*Peterson* is clearly distinguishable. Unlike *Peterson,* where there was no independent evidence linking the defendant to the conspiracy, here there was clear independent evidence of Nicholson's knowing participation in the conspiracy. It strains credulity to refer to Nicholson's contacts with Rankin and Ledwell as meetings where "legitimate business ventures" were discussed. Undisclosed deals which call for investments of $20,000 to be delivered at night in cash in a brown paper bag on one hour's notice hardly fall into the category of legitimate business ventures.

Thus, there was sufficient evidence of appellant's knowing participation to justify the trial court's submitting the conspiracy charges to the jury. The trial judge was correct that the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion that defendant is guilty as charged.

*The Jewell "Deliberate Ignorance" Instruction*

The trial judge gave the following jury instruction concerning the government's burden of proof on the knowledge element of the conspiracy charges:

The word knowingly, as used in the crimes charged in the indictment, means that the acts were done voluntarily and purposefully, and not because of mistake, accident or for some other innocent reason. The Government has the burden of proving beyond a reasonable doubt that the Defendant had knowledge that he was furthering the goals of the conspiracy or conspiracies charged in the indictment.

The fact of knowledge may be established by direct or circumstantial evidence, just as any other fact in the case. Deliberate avoidance of such knowledge is the equivalent of actual knowledge, if you find beyond a reasonable doubt that the Defendant was aware of the high probability that the money he invested was to be used in the drug importation and distribution scheme charged in the indictment. The deliberate avoidance must have been solely and entirely the fault of the Defendant. However, if you find that the Defendant actually believed that his money was not going to further a drug importation and distribution scheme as charged in the indictment, then you must find him not guilty.

This instruction accurately states the "deliberate ignorance" standard set forth by this court in *United States v. Jewell,* 532 F.2d 697, 704 (9th Cir. 1976) (*en banc*). *See also United States v. Murrieta-Bejarano,* 552 F.2d 1323 (9th Cir. 1977); *United States v. Erwin,* 625 F.2d 838 (9th Cir. 1980). Appellant does not appear to dispute the accuracy of the instruction's statement of the standard, but he does argue that it should not have been applied to this case. He cites *United States v. Murrieta-Bejarano, supra,* for the proposition that the *Jewell* instruction should only be given in "comparatively rare cases," since it may create a presumption of guilt in the minds of the jury with potential prejudice to the defendant. *Id.* at 1325. *Murrieta-Bejarano* holds that a *Jewell* instruction should not be given where there is "no evidence" indicating that the defendant had conscious purpose to avoid learning the truth. *Id.* Referring to the same facts that he contended indicated that the undisclosed "business venture" was not a marijuana deal, appellant argues that there was "no evidence" of such a purpose in this case.

■ This argument is unpersuasive. The circumstances surrounding the investment opportunity presented to Nicholson would have put any reasonable person on notice that there was a "high probability" that the undisclosed venture was illegal. Any rea-

sonable person would have inquired extensively into the nature of the proposed venture before he invested $20,000 into it. Although Nicholson testified that he did ask Ledwell about whether the venture was a drug deal, it has already been explained that the judge and jury reasonably could have chosen to disbelieve this uncorroborated, self-serving statement. Furthermore, any reasonable person would not have been satisfied with second-hand assurances from a known drug dealer about the activities of another drug dealer. He would have asked additional questions, unless, of course, he did not want to hear the answers.

This is precisely the type of case where the *Jewell* instruction is appropriate. The government presented substantial evidence indicating that Nicholson deliberately avoided obtaining positive knowledge of the nature of the deal in which he invested his money, and that this deliberate avoidance was "solely and entirely" his own fault. There was also testimony from several co-conspirators that such "deliberate avoidance" was an established practice in the illegal drug business. To not give a *Jewell* instruction in this case would allow the "money men" financing drug importation and distribution to escape liability by the simple expedient of not asking questions about how their money is to be used. The *Jewell* standard eliminates the need to establish such positive knowledge to obtain a conspiracy conviction. It is sufficient to establish that the defendant was aware of a high probability that his money would be used to further illegal activities and that he deliberately avoided finding out the facts of the situation. *United States v. Jewell, supra,* at 700. Nicholson's activities clearly fall under this standard.

The judgments of conviction are AFFIRMED in all respects.