**UNITED STATES of America, Appellee,**

v.

**Gerald J. LANDSBERGER, Appellant.**

No. 81–2426.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1982.

Decided July 29, 1982.

Rehearing and Rehearing En Banc Denied Aug. 31, 1982.

---

Gerald J. Landsberger, St. Paul, Minn., pro se for appellant.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, Wynette J. Hewett, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee; James M. Rosenbaum, U. S. Atty., Minneapolis, Minn., of counsel.

Before LAY, Chief Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Chief Judge.

Pursuant to sections 7402(a) and 7407 of the Internal Revenue Code, title 26, the district court, the Honorable Robert G. Renner presiding, permanently enjoined Gerald J. Landsberger from engaging in fraudulent and deceptive conduct that substantially interfered with the proper administration of the tax laws. The court also found Landsberger in contempt of its earlier preliminary injunction and fined him $10,000 and the additional sum of $500 per day until he made a showing satisfactory to the court that he had ceased all of his activities that were in violation of the tax laws. Landsberger has appealed. We affirm the grant of the permanent injunction; we vacate the contempt decree proceedings and remand to the district court, 534 F.Supp. 142, for reconsideration in light of this opinion.

Landsberger promoted a plan called "Foreign Tax Haven Double Trust." Under the plan, each participant entered into an irrevocable "Intrusted Personal Services Contract" with an organization known as Professional & Technical Services (P&TS). In exchange for 27 economic justifications, the participant agreed to sell his personal services to the organization for $1 per year. The contract required that each paycheck the participant received from his employer be endorsed and delivered to P&TS. P&TS sold the checks to International Dynamics for $1, and International Dynamics forwarded the proceeds of the checks to IDI Credit Union, a charitable organization. A participant had an expectation, but no written guarantee, that IDI would give him a gift approximating 90 per cent of the proceeds of his paycheck. Ten per cent of the participant's payment to P&TS was retained as a trustee's fee by International Dynamics. Landsberger admitted that he received money by virtue of this scheme, but maintained that the sums he received were gifts. He also admitted that through his power to draw checks on the IDI account he could give himself a gift.

Landsberger described the DOUBLE TRUST as "the finest taxhaven ever invented." In his promotions, he represented that "the 'Double Trust' can and does reduce and/or eliminate all income and/or capital gain profits being taxed/withheld." Defendant prepared returns for the participants and aided them in filing W–4 forms to eliminate the withholding of federal income taxes from their wages.

In the district court, it was undisputed that (1) Landsberger had enrolled approximately 80 taxpayers in the program for the taxable year 1980; (2) the participants had paid fees ranging from $800 to $1,400 plus ten per cent of the amount of funds transmitted by means of this device; and (3) it would require approximately 2,000 employee hours to collect the unpaid taxes, not

* Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

including hours spent by supervisors to oversee that process, or the expenditure of time and resources necessary to process cases that were challenged at the administrative level or in court.

*The Permanent Injunction.*

 The defendant has filed a pro se brief urging reversal on the ground that the Personal Services Contract Program is a legal program. We disagree, and affirm the district court on the basis of its reasoning. Judge Renner observed:

> The documents which form the Double Trust package marketed by defendant, . . . permit no other conclusion than that the scheme is illegal. The principle is well settled that "income must be taxed to him who earns it." *Commissioner v. Culbertson,* [337] U.S. 733, 739–740 [69 S.Ct. 1210, 1212–1213, 93 L.Ed. 1659] (1949). Defendant cannot avoid this doctrine by including in the Intrusted Personal Services Contract a clause which specifies that the client thereby enslaves himself for life to a trust which then "owns" him as well as the fruits of his physical labors. According to [Landsberger], this clause saves the individual from tax liability because in signing such a clause, he has conveyed away the "tree" as well as the "fruit". *See Lucas v. Earl,* 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731 (1930).

The district court correctly held that such a clause has no effect on the legality of this plan; one cannot legalize an arrangement simply by saying it is legal. The Supreme Court has held that the person who, by the exercise of a power to command income, enjoys the benefit of the income, is liable for the tax thereon. This is so regardless of any anticipatory arrangement by the one vested with the right to income to transfer the income to another. *Harrison v. Schaffner,* 312 U.S. 579, 582, 61 S.Ct. 759, 761, 85 L.Ed. 1055 (1941). Income is taxable to the person whose performance of services creates the right to receive the income. *See Daugherty v. Commissioner,* 63 F.2d 77, 79

(9th Cir. 1933). The district court continued:

> Defendant admits that the person who signs the contract with Professional and Technical Services continues to perform services for his original employer. He refuses to state what services the person performs for Professional and Technical Services Group. Instead, he merely asserts that there are "15 or 20 economic justifications involved that are provided to the employee from Professional and Technical Services." . . . As plaintiff argues, however, the Professional and Technical Services Group has no control over the daily work of the individual. Similarly, it has no control over the other incidents of employment such as sick leave, health benefits and vacation which continue to inure solely to the individual. See, *Millette & Assoc. Inc. v. Commissioner,* T.C. Memo 1978–1980, 37 TCM 774, (CCH) (1978), *aff'd,* 594 F.2d 121 (5th Cir. 1979). The Court finds that Professional and Technical Services Group is merely a sham created to aid individuals in the illegal avoidance of tax on personal services income.
>
> Defendant also claims that the Professional and Technical Services Group and the Double Trust are unrelated. This is not a disputed fact, but a legal conclusion which finds no support in the documents contained in defendant's Double Trust package. . . . Finally, defendant argues that the check issued by IDI Credit Union in an amount equal to 90% of the client's gross income is a "gift" and therefore nontaxable to the recipient. This contention is entirely frivolous.

The district court rightly concluded that defendant's plan is simply an anticipatory assignment of income, and will result in the avoidance of taxes no more than the "family trust" plan which it resembles. *Gran v. Commissioner,* 664 F.2d 199, 200 (8th Cir. 1981); *Vnuk v. Commissioner,* 621 F.2d 1318, 1320–21 (8th Cir. 1980). It is well established that income must be taxed to he who earns it. *United States v. Basye,* 410 U.S. 441, 449–50, 93 S.Ct. 1080, 1085–86, 35

L.Ed.2d 412 (1973); *Commissioner v. Culbertson,* 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949). A taxpayer cannot avoid taxation by anticipatory assignment of income to another person or entity. *Cf. Gran v. Commissioner,* 664 F.2d 199, 200 (8th Cir. 1981).

We therefore find the government was entitled to judgment as a matter of law.

*The Contempt Order.*

The district court entered a preliminary injunction against Landsberger on July 27, 1981. The final decree was not entered until December 14, 1981. In the final decree the court found that Landsberger had violated its order preliminarily enjoining him from participating directly or indirectly in the tax haven scheme. The court found:

> The Government has made a strong showing that defendant has continued, despite the Court's Order of July 27, 1981, to promote the Double Trust both directly and indirectly. Defendant's participation in a change of signature cards for the I.D.I. Credit Union account at the Northwestern National Bank of St. Paul and his endorsement of at least two documents which represent that the Double Trust eliminates or reduces tax liabilities constitute violations (see Declaration of Stephen Smith) of both the letter and spirt [sic] of the Order.

■ Landsberger urges that the change of signature cards took place on July 20, 1981, while the motion of the United States for preliminary injunction was pending, and not after the July 27 entry of the court's order. The government concedes this fact. Therefore, we must vacate the contempt order since the district court specifically recites this to be one of the acts that violated its decree. Obviously, if the act was committed before the injunction was entered, it could not have violated the injunction. *Cf. In re Weeks,* 570 F.2d 244, 245 n.1 (8th Cir. 1978).

This is not to say the court erred in finding defendant in contempt. Other conduct strongly suggests defendant's continuing participation in the activity. Defendant urges that his witnessing of the contracts as a notary public does not demonstrate his participation.in the scheme. He also argues that he is not a trustee, director, stockholder or beneficiary of P&TS, and therefore that the company's continued operation does not demonstrate that he was involved in this activity.

Because we vacate the contempt decree on other grounds, we need not pass on these contentions now. In remanding, we do observe that defendant overlooks the fact that the court ordered him to cease and desist *all* activity which directly or indirectly is related to the tax haven scheme. The court's finding suggests that his activity subsequent to the decree did continue, notwithstanding his attempt to legally exculpate himself from the activities connected with P&TS. That Landsberger received profits of $37,000 in September 1981 and $60,000 in October 1981 "as the result of the continued operation of the double trust" is not denied. These facts seem to demonstrate obvious contempt of the court's decree.

In any event, the court should review the contempt decree and make specific findings relating to Landsberger's conduct subsequent to the entry of the preliminary injunction.

The order of the district court granting the permanent injunction is affirmed; the order finding Landsberger in contempt is vacated and the cause is remanded for further proceedings.