**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James C. RUSSELL, Earhl R. Schooff,
and Lawrence M. Richey,
Defendants-Appellees.**

**Nos. 86–3013, 86–3014 and 86–3015.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 2, 1986.

Decided Nov. 18, 1986.

Donald W. Searles, Atty., Roger M. Olsen, Michael L. Paup, Robert E. Lindsay, Deborah W. Dawson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Thomas Bothwell, Bothwell & Lorello, Christopher S. Tait, Yakima, Wash., Joseph Nappi, Jr., Brian T. Butler, Spokane, Wash., for defendants-appellees.

Before FLETCHER, FERGUSON, and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiff United States appeals the district court's dismissal of 12 counts of a 28–count indictment. The district court held that the defendants lacked fair notice of the illegality of the tax avoidance schemes they developed and promoted, and that they accordingly could not have willfully violated the statute. We reverse and remand for trial.

## BACKGROUND

Frank Forrester developed tax shelter programs designed to reduce taxpayers' income tax liabilities. Under Forrester's primary program, the "personal services contract," taxpayers would "sell" their life services to Professional and Technical Services (PTS), an entity created by him, for one dollar per year. When the taxpayers received paychecks from their employers, they would endorse the checks and send them to PTS, which transferred the checks to International Dynamics, Inc. (IDI), another Forrester organization. IDI in turn transferred the funds to IDI Credit Union (IDICU), which would send the taxpayers "gift" checks equal to 90 to 92 percent of the taxpayers' original paychecks. Some of these entities purported to be foreign trusts or corporations.

Forrester's other tax scheme at issue here was the "9:1 tax shelter" under which taxpayers purchased "consulting services" from IDI. Taxpayers paid an allegedly deductible consulting fee to IDI, and IDI immediately sent the taxpayers an alleged tax-free reimbursement check less a ten percent fee. No consulting services were ever performed.

Defendants James Russell, Earhl Schooff, and Lawrence Richey were involved in the promotion and sale of these schemes. These three, along with Forrester, who is now deceased, were charged in a 28–count indictment with a variety of tax

fraud, mail fraud, and tax evasion violations.

On motion by the defendants, the district court dismissed twelve counts of the indictment, finding that under the reasoning of *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), the defendants lacked fair notice of the illegality of the tax schemes until July 29, 1982 when the Eighth Circuit held, in a civil proceeding, that a "personal services contract", similar to those involved in this case, was an illegal tax avoidance scheme. *United States v. Landsberger*, 692 F.2d 501 (8th Cir.1982).[1]

The government appealed the dismissal of the twelve counts. The district court continued trial on the remaining counts, ruling that the time accruing during the pendency of the appeal would be deemed excludable delay under the Speedy Trial Act.

## DISCUSSION

### 1. *Appealability*

■ The district court dismissed 12 of the 28 counts in the indictment, and continued trial on the remaining counts pending this appeal. To prosecute its appeal, the government "must show that it has the right to appeal and that the order appealed from comes within the terms of a statutory grant of appellate jurisdiction." *United States v. Dior*, 671 F.2d 351, 354 (9th Cir. 1982). To satisfy the first prong, the government must be authorized to bring the appeal under 18 U.S.C. § 3731. To satisfy the second prong, the decision being appealed generally must constitute a "final

judgment" under 28 U.S.C. § 1291. *United States v. Martinez*, 763 F.2d 1297, 1307 (11th Cir.1985). Despite the general application of § 1291's finality requirement, "[s]ection 3731 can, and does, make it lawful for the government to take certain appeals even though there is no final judgment." *Id.* at 1308 n. 10. According to the Eleventh Circuit in *Martinez*, this "right to take an interlocutory appeal [must be] expressly provided in section 3731." *Id.*

Title 18 U.S.C. § 3731 provides in relevant part: "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment ... as to any one or more counts." Because the district court dismissed 12 of the 28 counts, the government is authorized to appeal under § 3731, thus satisfying the first prong. As to the second prong, the district court order is not a final judgment except as to Schooff because it does not dispose of the remaining 16 counts.[2] However, we have interpreted the quoted portion of § 3731 as expressly providing the right to take an interlocutory appeal in this situation. *See United States v. Marubeni America Corp.*, 611 F.2d 763, 764–65 (9th Cir.1980) (court held that § 3731 supplied appellate jurisdiction where district court had dismissed portion of one count and had suspended pre-trial proceedings on remaining counts pending appeal; no discussion of § 1291's finality requirement). Following *Marubeni*, we conclude that we have jurisdiction to hear the interlocutory appeal in the case at bar.[3]

### 2. *Standard of Review*

The district court "assumed the truth of each material fact set forth in the indict-

---

1. *Landsberger* involved only the "personal services contract," and did not involve the "9:1 tax shelter." The district court in the case at bar apparently concluded that pre-*Landsberger*, the defendants lacked fair notice of the illegality of the "9:1 tax shelter" as well, because the district court dismissed at least one count involving only the "9:1 tax shelter."

2. We note that defendant Schooff was charged only in count I, which was dismissed. The district court's order is therefore final as to

Schooff. The interlocutory appeal issue arises only as to defendants Russell and Richey.

3. At the end of its Order, the district court stated: "To the extent that this Court has any authority to entertain the government's motion for leave to take an interlocutory appeal, the same is GRANTED." This statement has no effect. There is no provision for district court certification of interlocutory criminal appeals analogous to 28 U.S.C. § 1292(b) regarding interlocutory civil appeals.

ment and, applying *Dahlstrom*, ruled that regardless of the evidence, the government would be unable to sustain its burden with respect to those counts which were dismissed." The district court thus ruled as a matter of law, and we review this holding de novo.

### 3. *Dahlstrom*

The tax avoidance scheme at issue in *Dahlstrom* is described at 713 F.2d 1425–26, and also in *Zmuda v. Commissioner*, 731 F.2d 1417, 1419 (9th Cir.1984). *Zmuda* was an appeal from a Tax Court judgment disallowing deductions and assessing civil penalties for use of a tax scheme virtually identical to the one at issue in the *Dahlstrom* criminal prosecution. At the heart of the scheme were three foreign trusts to be established individually by each taxpayer participant. Property or income was transferred to and among these trusts, and eventually transferred back to the taxpayer as a "gift." Some of the transactions, including the "gift" to the taxpayer, were allegedly tax-free in part because of the foreign status of the trusts.

The *Dahlstrom* defendants were tried by a jury and convicted of conspiracy to defraud the United States and of aiding and abetting the preparation and presentation of fraudulent income tax returns. On appeal, the court noted that to convict a person for aiding and abetting the preparation and presentation of fraudulent income tax returns under 26 U.S.C. § 7206(2), the government must prove the defendant acted willfully. 713 F.2d at 1426–27. Under the statute, a "willful" act consists of "a 'voluntary intentional violation of a known legal duty.'" *Id.* at 1427 (quoting *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976)). The court held that because "the legality of the tax shelter program advocated by the appellants in this case was completely unsettled by any clearly relevant precedent on the dates alleged in the indictment," the defendants lacked fair notice of the illegality of their acts and thus lacked the requisite intent to violate the law. 713 F.2d at

1428. The court accordingly reversed the judgments. *Id.* at 1429.

### 4. *Frank Forrester's Tax Shelter Schemes*

The heart of the primary Forrester tax shelter scheme was the personal services contract under which taxpayers sold their life services to PTS, one of the entities created by Forrester, for one dollar per year. The taxpayers were allegedly thereby obligated to transfer all paychecks to PTS. According to the indictment, the defendants assured the participants that the income was no longer taxable to them as individuals because PTS owned their paychecks.

As this court has recognized, "[t]he guiding principle in assignment of income cases is that income is taxed to the person or entity, which in fact controls the earning of income." *Johnson v. United States*, 698 F.2d 372, 374 (9th Cir.1982). The Supreme Court first announced this rule in 1930 in *Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 74 L.Ed. 731 (1930), and has often repeated it. *See, e.g., United States v. Basye*, 410 U.S. 441, 450, 93 S.Ct. 1080, 1086, 35 L.Ed.2d 412 (1973) ("The principle of *Lucas v. Earl*, that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle, ... stands today as a cornerstone of our graduated income tax system."); *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212, 93 L.Ed. 1659 (1949) (court cites "the first principle of income taxation: that income must be taxed to him who earns it").

The acts alleged in the indictment constitute violations of the statute because they contradict this "first principle" of tax law. Such anticipatory assignments of income have been recognized as ineffective to shift income for tax purposes for over fifty years. The defendants in this case had fair notice of the illegality of their scheme from its inception.

According to the district court,

> The twist in the instant scheme is that the accused not only took cognizance of

the controlling nature of *Lucas* and progeny, but cited that decision in their promotional literature for the proposition that while preassignment of the fruit may be unlawful, there is no prohibition against assigning the tree. Ergo, if the assignee-trust owns the tree, it also owns the fruit, and the assignor-taxpayer is thus relieved of any liability for taxes on such fruit.

This fruit/tree distinction does not, however, save the defendants' scheme. In *Lucas*, the Supreme Court held that "the tax could not be escaped by anticipatory arrangements and contracts, however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it." 281 U.S. at 114–15, 50 S.Ct. at 241. The indictment in the case at bar alleges that a taxpayer who signed a personal services contract "continued to work for his previous employer and receive paychecks in his own name." The indictment further states that "the defendants orally assured these individuals that they did not have to turn over every paycheck to Professional and Technical Services. Instead, individuals who signed a 'personal services contract' had complete discretion over whether or not they turned their paychecks over to Professional and Technical Services."

These allegations in the indictment indicate that participants in the scheme continued to "earn" their own salaries. The scheme is therefore illegal under *Lucas*. Calling the scheme an assignment of life services rather than an assignment of income does not change the nature of the underlying acts alleged in the indictment.

■ The fact that this scheme involved the use of purported foreign trust organizations, and that this particular scheme had not been ruled illegal until the *Landsberger* litigation, does not change the basic conclusion. Regardless of the entities through which taxpayers' monies were funneled, the basic personal services contract remains an assignment of income that is ineffective for tax purposes. If it is clear beyond any doubt that a scheme is illegal under established principles of tax law, then participants have fair notice of its

illegality even if no appellate court has explicitly so ruled. *See United States v. Ingredient Technology Corp.*, 698 F.2d 88, 96 (2d Cir.) ("it is immaterial that 'there is no litigated fact pattern precisely in point' "), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). This case is thus distinguishable from *Dahlstrom*, where the court was "convinced that the legality of the tax shelter program advocated by the [defendants] ... was completely unsettled by any clearly relevant precedent on the dates alleged in the indictment." 713 F.2d at 1428. *See United States v. Little*, 753 F.2d 1420, 1433–34 (9th Cir.1984) (court distinguished *Dahlstrom*, noting that the law regarding retroactive partnership allocations was clear on the dates alleged in the indictment); *United States v. Condo*, 741 F.2d 238, 240 (9th Cir.1984) (court distinguished *Dahlstrom*, observing that the constitutionality of the taxing system was clear), *cert. denied*, 469 U.S. 1164, 105 S.Ct. 924, 83 L.Ed.2d 936 (1985).

The other Forrester tax scheme was the "9:1 tax shelter." The illegality of this scheme was likewise clear beyond any doubt. "The incidence of taxation depends upon the substance of a transaction." *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); *see also Rickey v. Commissioner*, 502 F.2d 748, 752 (9th Cir.1974). The indictment alleged that taxpayer participants contracted with IDI for the purchase of "consulting services," paid a fee for the services, immediately received a "gift" from IDI equal to 90 percent of the fee paid, and never received any consulting services. They were told that the "fee" paid for the "consulting services" was tax deductible. This scheme lacks substance, and the defendants had fair notice of its illegality.

We conclude that assuming the truth of the allegations in the indictment, defendants were engaged in promoting tax schemes, the illegality of which they had fair notice. The district court erred in granting the defendants pre-trial motions for dismissal of 12 counts.

REVERSED and REMANDED.

FERGUSON, Circuit Judge, concurring:

I concur in Judge Fletcher's opinion. I write separately in an effort to clarify our decision in *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).

Initially, I disagree with the district court's decision to dismiss a number of counts without benefit of trial. The court ruled that, regardless of what evidence might be produced, the government could not prove willfulness unless an appellate court had previously held the specific tax shelter scheme illegal. I know of no law that permits the dismissal of an indictment based upon the nonexistence of facts, such as a defendant's state of mind, prior to trial. The district court's reliance on *Dahlstrom* is misplaced, for *Dahlstrom* was decided after a trial in which the government had ample opportunity to demonstrate defendants' willfulness.

Further, as a member of the panel in *Dahlstrom*, I view its facts and holding differently than did the district court. In *Dahlstrom*, there were two different categories of defendants. The first group, including all of the defendants except Durst, only advocated tax shelters—they did no more than talk. They prepared no false or fraudulent documents for the I.R.S.; at most, they may have counseled such a preparation. The bulk of the opinion, then, dealt with a group of people whose acts could not possibly be "advocacy ... directed to inciting or producing imminent lawless action ... likely to incite or produce such action." *Dahlstrom*, 713 F.2d at 1428 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1980) (per curiam). The prosecution under I.R.C. § 7206(2) thus failed because it failed to prove incitement of imminent unlawful action.

Defendant Durst presented a different case, for he had prepared a tax return based upon the fraudulent tax plan. His conviction was reversed nonetheless because we found the filing of a document an essential element of a conviction under I.R.C. § 7206(2), and the return prepared by Durst was never filed. *See Dahlstrom*, 713 F.2d at 1429.

*Dahlstrom* holds, as noted in its Conclusion, that "[p]rosecution for *advocacy* of a tax shelter program in the absence of any evidence of a specific intent to violate the law is offensive to the *first* and fifth amendments of the United States Constitution." *Id.* (emphasis added). The *Dahlstrom* case was primarily a First Amendment case involving pure advocacy. The defendants there were prosecuted even though nothing gave them fair warning that *advocacy* of the tax shelter would result in a criminal prosecution. It is doubtful that a statute prohibiting advocacy in tax matters would, absent imminent unlawful action, withstand the First Amendment's protection of speech.

The case at hand does not present a case of pure advocacy. The counts of the indictment that were dismissed allege various unlawful acts, not mere speech, on the part of the defendants. The defendants are not prosecuted for the advocacy of false or fraudulent statements, but for various acts in support of false or fraudulent statements. Their case is outside the advocacy protection granted by *Dahlstrom*.