967 F.2d 592
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eva R. AMUNDSEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leon G. HILL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne G. HILL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hyrum J. AMUNDSEN, Jr., Defendant-Appellant.
 Nos. 89-50161, 89-50162, 89-50164 and 89-50165.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1992 in Nos. 89-50161,
89-50162 and 89-50164.
Submitted March 4, 1992* in No. 89-50165.
Decided June 19, 1992.
 
 Before CANBY, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Eva Amundsen, Hyrum Amundsen, Leon Hill, and Wayne Hill appeal their convictions for making and subscribing false tax returns and assisting in the preparation of false returns, in violation of 26 U.S.C. §§ 7206(1) and 7206(2). We affirm.
 
 A. Jurisdiction
 
 3
 We are met at the outset with a question of jurisdiction. Hyrum Amundsen contends that the district court lacked jurisdiction because: (1) the Treasury Secretary did not properly delegate enforcement authority to the Commissioner of Internal Revenue; and (2) the Internal Revenue Service failed to comply with the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq. Both theories are meritless.
 
 1. Delegation Order
 
 4
 According to Amundsen, the district court lacked jurisdiction because the agency delegation order was not published in the Federal Register as required by the Federal Register Act, 44 U.S.C. § 1501 et seq., and the Administrative Procedure Act, 5 U.S.C. § 552. These statutes do not create a jurisdictional issue, but rather relate to the lawfulness of the actions taken by the I.R.S. In any event, the FRA argument is untenable under our recent holding in United States v. Saunders, 951 F.2d 1065, 1067-68 (9th Cir.1991) (Federal Register Act does not require publication of delegation orders). The APA also affords no support, as that statute does not require publication of orders "which internally delegate authority to enforce the Internal Revenue laws." See United States v. Hoyland, No. 91-55233, slip op. 2781, 2785 (9th Cir. Mar. 20, 1992) (citation omitted).
 
 
 5
 2. Compliance with the Paperwork Reduction Act
 
 
 6
 Amundsen alternatively argues that the I.R.S. failed to comply with the Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq. This argument also is irrelevant to the jurisdictional issue. The PRA simply requires that any "information collection request" from a federal agency display an Office of Management and Budget control number. 44 U.S.C. § 3512. The consequence of noncompliance is that "no person shall be subject to any penalty for failing to maintain or provide information" to the agency. Id.
 
 
 7
 Apart from the jurisdictional concern, the PRA provides no defense in this case. The statute is designed to control agency activity, and does not provide an escape hatch to taxpayers who violate criminal statutes. United States v. Hicks, 947 F.2d 1356, 1359 (9th Cir.1991). Accordingly, the PRA does not relieve Amundsen of liability under 26 U.S.C. §§ 7206(1) and 7206(2). See id.
 
 B. Comment During Closing Argument
 
 8
 Having determined that the district court had jurisdiction, we turn to the Fifth Amendment issue. Hyrum Amundsen contends that the prosecutor impermissibly commented on his failure to testify by referring to statements Amundsen made "through his attorney and through his wife." This comment came during the rebuttal phase of closing argument, after the prosecution had summarized Amundsen's views that wages are not taxable and that the tax system is unfair and unconstitutional. Amundsen objected and moved for a mistrial, but the district court denied his motion.
 
 
 9
 Our review of this decision is de novo. United States v. Schuler, 813 F.2d 978, 980 (9th Cir.1987). We must assess whether the language used was manifestly intended to be a comment on the failure to testify, or was of such character that the jury would naturally and necessarily take it to be a comment on the failure to testify. United States v. Soulard, 730 F.2d 1292, 1306 (9th Cir.1984).
 
 
 10
 The prosecutor seems to misspeak by first referring to Amundsen's direct statements, but then refers to statements made through Amundsen's attorney and his wife. It thus appears that the government intended to address the argument being rebutted and the appeal to the jurors' sympathy, rather than the decision not to testify. Accordingly, the first prong of the Soulard test is satisfied. See United States v. Diecidue, 603 F.2d 535, 552 (5th Cir.1979) (where either scenario is plausible, court finds no manifest intent).
 
 
 11
 We next must consider whether a reasonable jury would naturally and necessarily perceive the remark as a comment on the failure to testify. Because the remark was indirect, the jury probably did not focus on the implications of speaking through a lawyer. See United States v. Kessi, 868 F.2d 1097, 1106 (9th Cir.1989) (no violation due to statements that "Mr. Kessi's lawyer speaks for him" and that Kessi argued "through his counsel"). And because the rest of the statement dealt with the defense's arguments, the jury may well have perceived it as a fair reply. See Soulard, 730 F.2d at 1307. Accordingly, these circumstances indicate that the jury would not naturally and necessarily perceive the statement as a comment on the failure to testify. See Kessi, 868 F.2d at 1106; Soulard, 730 F.2d at 1307.
 
 
 12
 Even if the comment was impermissible under Soulard, reversal would not be warranted. The prosecutor made an isolated statement that did not stress inferential guilt, and a curative instruction followed. In light of these facts, any error was harmless beyond a reasonable doubt. See Soulard, 730 F.2d at 1307.
 
 C. Sufficiency of the Evidence
 
 13
 Three of the defendants contend that their convictions do not rest on sufficient evidence. Viewing all the evidence in the light most favorable to the prosecution, we must determine whether a rational trier of fact could have found the essential elements beyond a reasonable doubt. United States v. Marchini, 797 F.2d 759, 766 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987).
 
 1. Hyrum Amundsen
 
 14
 Amundsen argues that the evidence fails to support the jury's finding of willfulness, an element essential to his convictions under both 26 U.S.C. §§ 7206(1) and 7206(2).[1] A defendant in a criminal tax prosecution acts willfully by committing "a voluntary, intentional violation of a known legal duty." United States v. Pomponio, 429 U.S. 10, 12 (1976). According to Amundsen, the status of the I.D.I. scheme was unsettled until the Eighth Circuit's decision in United States v. Landsberger, 692 F.2d 501 (8th Cir.1982), and thus he could not have intended to violate a known legal duty. Alternatively, he argues that mere advocacy provides insufficient evidence of willfulness under United States v. Dahlstrom, 713 F.2d 1423, 1426-27 (9th Cir.1983), cert. denied, 466 U.S. 980 (1984).
 
 
 15
 Amundsen's first argument is untenable in light of United States v. Russell, 804 F.2d 571, 574-75 (9th Cir.1986). The fact that the I.D.I. scheme itself had not yet been invalidated is not controlling. See id. at 574. Amundsen had fair notice of its illegality under the bedrock principle that anticipatory assignments of income are ineffective to shift income for tax purposes. See id. at 574-75
 
 
 16
 With respect to the advocacy argument, the record reflects that Amundsen enrolled participants, received commissions, and paid finder's fees to other recruiters. He picked up checks from investor Armstrong Dowell and later delivered "gift checks" to him. In addition, Amundsen advised investors on how to prepare returns and even attended audits. Viewing this evidence in the light most favorable to the government, Amundsen's role transcends mere advocacy and thus prevents him from relying on Dahlstrom. See, e.g., United States v. Solomon, 825 F.2d 1292, 1297 (9th Cir.1987) (defendants who are closely involved in the creation and operation of tax shelters can draw no support from Dahlstrom ), cert. denied, 484 U.S. 1046 (1988).
 
 2. Wayne Hill
 
 17
 Like Hyrum Amundsen, Wayne Hill contends that there was insufficient evidence of willfulness to support his conviction under 26 U.S.C. § 7206(2). This contention is without merit. A self-professed tax expert, Hill had taken and passed two accounting courses. He admitted that he received a warning from Charles Spurrier about possible "questions" concerning the I.D.I. program. Further, Paul Craig testified that Hill's Bookkeeping Service told him to be careful and "not to send up any red flags." In addition, Hill received an indication of problems from a lawyer's opinion letter warning about scrutiny by the I.R.S. and containing no statements approving "gift checks." Hill's handling of tax returns for Craig and Walter Greider further indicates willful activity. When viewed in the light most favorable to the government, the evidence establishes willfulness beyond a reasonable doubt. See Marchini, 797 F.2d at 766.
 
 
 18
 Other evidence indicated that Hill played an active role in the operation. He not only helped to prepare returns, but also enrolled at least three program participants and acted as a check courier. Accordingly, the evidence supports the jury's finding that Wayne Hill violated 26 U.S.C. § 7206(2). See id.
 
 3. Eva Amundsen
 
 19
 Eva Amundsen also contends that the evidence was insufficient to support willfulness or any other element of 26 U.S.C. §§ 7206(1) and 7206(2). According to Amundsen, the jury's finding of willfulness is belied by two opinion letters prepared by a lawyer and a certified public accountant. Her reliance on these documents is misplaced. Neither letter mentions I.D.I. or the legality of swapping income for "gift checks." In fact, the accountant's letter refers to the possibility of questioning by agents.
 
 
 20
 Moreover, Amundsen attached a legal memorandum to each return she prepared. The memorandum cited Lucas v. Earl, 281 U.S. 111 (1930), in which the Supreme Court held that income is taxed to the earner. A reasonable jury thus could infer that Amundsen knew that the scheme did not effectively shift income for tax purposes. Finally, Amundsen's attitude toward the I.R.S. and prior failure to pay taxes further bolstered the willfulness finding. See Marchini, 797 F.2d at 766.
 
 
 21
 Despite this evidence, Amundsen maintains that she had a good faith belief that the I.D.I. program was valid, and was entitled to acquittal under Swayze v. United States, 785 F.2d 715 (9th Cir.1986). But as the government points out, Swayze does not hold that the evidence was insufficient to show negligent or intentional disregard of the law. The court merely concluded that the claims raised a genuine issue of material fact entitling the tax preparers to a trial. Swayze, 785 F.2d at 717-20. In contrast, Amundsen received a jury trial and had ample opportunity to litigate these issues. The jury considered her evidence and concluded that evidence of willfulness outweighed it.
 
 
 22
 Other evidence establishes the remaining elements of 26 U.S.C. § 7206(2). Amundsen prepared approximately 70 to 80 returns for I.D.I. investors. She also received "gift checks" from the I.D.I. Credit Union in her own name, and cashed "gift check" commissions from the credit union to her husband. Moreover, she prepared and subscribed her own tax return for 1982, which contained no mention of these gift checks. When viewed in the light most favorable to the prosecution, this evidence was sufficient to sustain the conviction. See Marchini, 797 F.2d at 766.
 
 
 23
 D. Exclusion of Evidence on Program's Legality
 
 
 24
 Leon Hill contends that the district court improperly excluded testimony about the status of the law on the I.D.I. charitable deduction. According to Hill, the district court should have permitted him to cross-examine I.R.S. Agent Judith Hoffman regarding her understanding of when the law invalidating the program became settled. We review this decision for abuse of discretion. United States v. Dupuy, 760 F.2d 1492, 1499 (9th Cir.1985).
 
 
 25
 Our decision in Russell contradicts Hill's assertion that the legality of the I.D.I. program was uncertain. The law clearly was settled even before the Landsberger decision and throughout Hill's involvement with I.D.I. See Russell, 804 F.2d at 575. Consequently, the district court did not abuse its discretion by excluding testimony offered to suggest uncertainty. See United States v. Vreeken, 803 F.2d 1085, 1091 (10th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 26
 Moreover, Hill has failed to demonstrate a logical nexus between his subjective understanding of the law and Hoffman's own opinions; Hill never claims to have sought or become aware of Hoffman's opinions during the period in question. Absent any such connection, her testimony can have no bearing on his state of mind. See United States v. Curtis, 782 F.2d 593, 599 (6th Cir.1986); cf. United States v. Powell, 955 F.2d 1206, 1214 (9th Cir.1991). Accordingly, the district judge did not abuse his discretion by refusing to permit cross-examination. See Curtis, 782 F.2d at 599.
 
 E. Jury Instructions
 
 27
 All four defendants contend that the district court improperly instructed the jury. Their contentions stem from the willful blindness and legal loophole instructions, and from the district court's alleged failure to instruct the jury concerning proof of an essential element.
 
 1. Willful Blindness
 
 28
 The Hills and Eva Amundsen contend that there was insufficient evidence to warrant a willful blindness instruction. Because the defendants objected to this instruction at trial, we must review for abuse of discretion. United States v. Bordallo, 857 F.2d 519, 527 (9th Cir.1988), cert. denied, 493 U.S. 818 (1989). Although an instruction is permitted when there is evidence of both actual knowledge and deliberate ignorance, it cannot be given when the evidence indicates only actual knowledge. See United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1988).
 
 
 29
 a. Wayne and Leon Hill
 
 
 30
 The following evidence against the Hills indicates that they had actual knowledge:
 
 
 
 **
 Both Hills ran a bookkeeping service, held themselves out as tax experts, and prepared or helped to prepare tax returns.
 
 
 **
 One investor testified that he received "warning signals" from the Hills regarding the legality of the deduction.
 
 
 **
 When asked about potential problems with the I.R.S., Leon Hill told one investor: "You pay cash for everything and that way nobody knows what you're doing."
 
 
 **
 Although Leon Hill advised investors that their income checks were assigned to a Canadian charity, he once admitted that the gift checks never actually left California.
 
 
 **
 Although Wayne Hill participated in the I.D.I. scheme, he delayed filing two of his own returns until 1985. In those returns, he made no mention of his participation in I.D.I.
 With respect to the Hills' willful blindness combined with a subjective awareness of probable illegality, the government introduced the following separate pieces of evidence:
 
 
 **
 An opinion letter, which both brothers distributed to potential investors, contained statements suggesting that the I.D.I. program might not be legal.
 
 
 **
 Leon Hill bragged that he made more than $500,000 during one year and paid no federal income tax.
 
 
 **
 In another conversation, a potential investor told Leon Hill that the I.D.I. scheme did not sound legal. Hill merely answered that many important people were involved.
 
 
 **
 Wayne Hill received warnings from Spurrier in late 1982 that there might be "questions" surrounding the I.D.I. program.
 
 
 **
 When assisting in the preparation of Walter Greider's returns, Wayne Hill never discussed the contract labor figure or ascertained the relationship between the corporation, I.D.I., and P & TS.
 
 
 
 31
 Although there is necessarily overlap between the evidence of actual knowledge and that of willful blindness, we conclude that there was sufficient evidence of each to render the instruction permissible. See Perez-Padilla, 846 F.2d at 1183; United States v. Nicholson, 677 F.2d 706, 710-11 (9th Cir.1982) (failure to investigate constitutes deliberate avoidance).
 
 
 32
 Leon Hill, however, does not rest his argument solely on the sufficiency of the evidence. He further contends that the instructions were invalid because: (1) the issue did not concern knowledge of facts; (2) the instruction undermined his good faith defense; and (3) the instruction given was prejudicially incomplete.
 
 
 33
 Contrary to Hill's claim, the willful blindness instruction has been used when knowledge of the law was at issue. See, e.g., United States v. Fingado, 934 F.2d 1163, 1166-67 (10th Cir.), cert. denied, 112 S.Ct. 320 (1991). Hill claims that this court held otherwise in United States v. Astorga-Torres, 682 F.2d 1331 (9th Cir.), cert. denied, 459 U.S. 1040 (1982), but his reliance on that case is misplaced. Astorga-Torres merely holds that a willful blindness instruction is inappropriate where the issue is something other than knowledge. Id. at 1337.
 
 
 34
 With respect to the second point, Hill argues that the willful blindness instruction undermined his good faith defense. This argument is meritless. The district court properly informed the jury about the adverse effect willful blindness must have on a good faith defense. See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir.) (approving instructions on conscious avoidance and reliance on advice of counsel), cert. denied, 493 U.S. 933 (1989); United States v. Duncan, 850 F.2d 1104, 1118 (6th Cir.1988) (same). At the same time, the court emphasized that the invalidity of the scheme did not establish guilt, and that the defendants could be acquitted on the basis of a good faith belief that their conduct was legal.
 
 
 35
 Finally, we must determine whether these instructions, taken as a whole, were in accord with the requirements of United States v. Jewell, 532 F.2d 697 (9th Cir.), cert. denied, 426 U.S. 951 (1976). The jury must be told that: (1) the required knowledge is established if the accused is aware of the high probability of the existence of the fact in question unless (2) he actually believes that it does not exist. Id. at 704 n. 21.
 
 
 36
 The instructions satisfy the first requirement by their reference to a defendant deliberately closing his eyes. See United States v. Suttiswad, 696 F.2d 645, 652 (9th Cir.1982) (one cannot willfully and deliberately close his eyes without an awareness of a high probability of the existence of a fact). With respect to the second requirement, the good faith instruction gave Hill ample protection. See United States v. Eaglin, 571 F.2d 1069, 1075 (9th Cir.1977), cert. denied, 435 U.S. 906 (1978). Accordingly, the instructions taken as a whole conformed to the Jewell standard.
 
 
 37
 b. Eva Amundsen
 
 
 38
 Eva Amundsen echoes Leon Hill's arguments that the instruction was invalid because: (1) the issue did not concern knowledge of facts; (2) the instruction undermined the good faith defense; and (3) the instruction was prejudicially incomplete. For reasons previously discussed, Amundsen's arguments must fail. The only remaining issue is whether there was sufficient evidence of actual knowledge and deliberate ignorance to create a basis for the willful blindness instruction.
 
 
 39
 The following evidence indicates actual knowledge:
 
 
 
 **
 Amundsen knew which clients were I.D.I. investors and was aware that they received 90 percent of their investment back as "gifts."
 
 
 **
 Amundsen was a trained tax preparer for H & R Block, and took a junior college course in income tax taught by an I.R.S. agent.
 
 
 **
 She prepared I.D.I. investors' returns in a manner that failed to disclose the 90 percent recovery of income. A memorandum attached to each return cited Lucas v. Earl, 281 U.S. 111 (1930).
 The prosecution also introduced separate evidence indicating willful blindness coupled with an awareness of a high probability that the scheme was illegal:
 
 
 **
 During a discussion with client Douglas Packard, Amundsen admitted that the I.D.I. program was "questionable."
 
 
 **
 Despite her knowledge that the scheme was questionable, Amundsen never sought out her tax professor for advice.
 
 
 **
 Both opinion letters contained warning signals about the legality of the double trusts, and neither addressed the legitimacy of "gift checks."
 
 
 
 40
 On balance, the evidence provided a sufficient basis for both deliberate avoidance and actual knowledge. Accordingly, the instruction was valid. See Perez-Padilla, 846 F.2d at 1183; Nicholson, 677 F.2d at 710-11.
 
 2. Legal Loophole
 
 41
 Eva Amundsen and the Hills also challenge the court's instruction that their claimed legal loophole did not exist as a matter of law. The government contends that all three defendants failed to preserve these objections, but Amundsen and Wayne Hill assert that timely objections were made. Failure to preserve an objection necessitates review for plain error, instead of abuse of discretion. United States v. Young, 470 U.S. 1, 15-16 (1985). Because we conclude that these claims fail under either standard, the waiver issue is not material.
 
 
 42
 The instruction accurately stated the law under Russell, and it was within the province of the court to inform the jury of this principle. See Powell, 955 F.2d at 1213; Solomon, 825 F.2d at 1297-98. Defendants maintain, however, that this instruction amounted to a directed verdict on the willfulness issue and undermined their good faith defense.
 
 
 43
 We conclude that this instruction did not take the question of willfulness from the jury. Instead, it merely referred to the defendants' claimed belief and explained that the loophole did not exist.
 
 
 44
 Equally unavailing is the contention that the loophole instruction undermined the good faith defense. Immediately after giving the loophole instruction, the court delivered an instruction on the good faith defense. This instruction further clarified that the defendants could be acquitted despite the settled state of the law. Accordingly, the defendants cannot prevail on this issue.
 
 3. Behanna Instruction
 
 45
 The final objection to the jury instructions comes from Hyrum Amundsen. He contends that two instructions were required to cure remarks made by the prosecutor. The prosecutor had urged the jurors to look at the "individual items of intent" and not to rely on the word of persons involved in the I.D.I. program.
 
 
 46
 With the respect to the first instruction, the government and defendant dispute whether a request was made. Even assuming that the request was properly made, we could review the denial under either the de novo or abuse of discretion standards. United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). Because we conclude that this argument fails under either standard, we need not choose between them.
 
 
 47
 According to Amundsen, the prosecutor effectively told the jurors to find proof of his knowledge by disbelieving the government's witnesses. Consequently, the court should have given an instruction based on United States v. Behanna, 814 F.2d 1318, 1320 (9th Cir.1987), and advised the jurors of their right to reject testimony by any person shown to have knowingly testified falsely. Amundsen overstates the holding of Behenna. There we held that a jury's disbelief of a defendant's out-of-court denial is insufficient to prove an essential element of a charged crime. Id. A subsequent case clarifies that there is no basis for a Behanna instruction where the likelihood of the evil prevented is too remote to justify the potential for confusing jurors. United States v. Miller, 874 F.2d 1255, 1278 (9th Cir.1989). As the Miller court explained, Behanna does not bar attorneys from urging jurors to disbelieve out-of-court statements, but merely states that the prosecution may not do only that. Id. The prosecution here urged the jury to consider "the individual items of intent," not just to disbelieve third party testimony.
 
 
 48
 Amundsen next contends that the court should have given the instruction contained in Section 17.08 of Devitt & Blackmar, Federal Jury Practice and Instructions (3d ed. 1977). That instruction states that jurors may reject all testimony from a witness shown to have testified falsely. It is difficult to see how this instruction would have aided Amundsen. Moreover, the instruction given by the court concerning witness credibility was adequate. The instruction emphasizes that jurors are the sole arbiters of credibility, and may base their assessments on a witness's demeanor even if his statements are uncontradicted. Viewed as a whole, this instruction appears adequate under either standard of review.
 
 
 49
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The elements of 26 U.S.C. § 7206(1) are: (1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document contained a written declaration that it was made under penalty of perjury; (3) the defendant did not believe the return, statement, or other document to be correct as to every material matter; and (4) the defendant acted willfully, with the specific intent to violate the law. United States v. Marabelles, 724 F.2d 1374, 1380 (9th Cir.1984)
 To convict a defendant under 26 U.S.C. § 7206(2), the government must prove: (1) the defendant aided, assisted, procured, counseled, advised, or caused the preparation and presentation of a tax return or other document; (2) the return or other document was false or fraudulent as to a material matter; and (3) the defendant acted willfully. United States v. Crooks, 804 F.2d 1441, 1448 (9th Cir.1986).