IRA J. ANDREWS, JR., AND ROBERTA D. ANDREWS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Andrews v. Commissioner
Docket No. 15134-81.
United States Tax Court
T.C. Memo 1985-380; 1985 Tax Ct. Memo LEXIS 255; 50 T.C.M. (CCH) 555; T.C.M. (RIA) 85380; July 29, 1985. Barbara J. Rose, for the petitioners. Wesley F. McNamara, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' income tax, together with additions to tax, as follows: Additions to Tax
Calendar Year
Deficiency in Tax
Section 6653(a) [1]
1977
$17,485.03
$874.25
1978
28,301.70
1,415.09
1979
38,322.71
1,916.14
After concessions, the only issue which the Court must decide is whether petitioners were guilty of negligence, within the meaning of section 6653(a), in the reporting of their income and *256 tax for the years in question. At the time of filing their petition herein, as well as during the years in issue, petitioners were residents of Biddle, Montana. Petitioners filed joint individual returns of their income on the calendar years basis. During the years in question, as well as for a number of years prior thereto, petitioners were ranchers, operating a cow and calf operation, and utilizing approximately 7,200 acres in Powder River County, Montana, which they owned, together with a further 3,000 acres which they leased. Both petitioners worked in the operation of the ranch, which apparently had been inherited by petitioner Ira Andrews from his parents, and were assisted in the operation by their older children and, from time to time, by extra hired help. In 1977, petitioners became concerned with estate planning, and specifically with the problem of how to preserve their principal asset, the ranch. They had given some thought to the idea of incorporating the ranch, but had apparently decided against it, based upon some unhappy experiences (not otherwise described herein) suffered by neighboring ranchers who had incorporated their holdings. Petitioners had attended *257 meetings in the area of people situated like themselves, sponsored by local banks and others, in the year 1975, where estate planning was the principal topic of discussion and, in this context, had heard discussion of the subjects of wills, trusts and corporations, which were addressed by various local attorneys and others. On or about June 1, 1977, petitioners were visited by representatives of an organization known as the Institute of Individual Religious Studies (hereinafter "IOIRS"), who promoted to petitioners the sale of materials which allegedly would enable petitioners to form a family trust, to which petitioners would convey all their ranching assets, together with their lifetime services. After listening to the sales presentation, petitioners purchased a set of form materials enabling them to form such a trust. Petitioners purchased these materials from IOIRS on June 1, 19778 under a contract which gave them the right to void the sale and recover their purchase price after a five-day period of inspection. On the same day, petitioners filled out the trust form document as well as documents conveying to the trust the ranch assets. On the next day, however, June 2, 1977, petitioners *258 took the IOIRS documents and went to see their regular family attorney, a Mr. Lucas. This attorney, who had handled matters for petitioners previously, was located 100 miles away in the town of Miles City, Montana, and was the nearest private practicing attorney to the ranch. At the interview with Mr. Lucas, petitioners showed him the IOIRS materials and asked his advice. The details of the questions asked and the answers provided are not disclosed in this record, but petitioners thereafter went ahead and completed the trust formation and the conveyance of the ranch properties to it, and also purported to convey their lifetime services to the trust. Pursuant to the trust instrument, "Certificates of Beneficial Interest" were then given to petitioner Roberta Andrews and petitioners' children, in varying amounts. At the time they purchased the IOIRS materials to form their family trust in 1977, petitioners were notified by the IOIRS salesmen that the proposed trust device had not been agreed to nor endorsed by the Internal Revenue Service as an effective means of reducing income taxes, that the Internal Revenue Service had issued adverse rulings with respect to some or all of the *259 proposed trust provisions, and that IOIRS gave no guarantees to the purchasers of their materials that the trust device would be successful in reducing taxes. Purchasers were notified that they should obtain independent professional advice with regard to the tax aspects of the family trust plan. IOIRS represented, however, that it would undertake to represent petitioners and other purchasers in defending the validity of the trust plan, if the same were attacked by the Internal Revenue Service. Apparently in reliance upon the IOIRS representations, at least in part, petitioners filed 1977, 1978 and 1979 trust income tax returns for the "Ira J. Andrews, Jr., Trust" on the basis of reporting all income from the ranching operation as income of the trust after June 1, 1977. The returns for 1977 and 1978 were prepared by petitioner Roberta Andrews. In these trust returns, the trust deducted generally the same items which petitioners had been deducting individually in their own tax returns in previous years with respect to the ranch operation, together with certain other deductions related to their home and personal expenses which they had not deducted in their previous returns. For *260 the year 1979 the trust return was prepared by a certified public accountant whom petitioners hired for the purpose. In late 1978, petitioners attempted to contact IOIRS, but were unsuccessful in doing so. Thereafter, they made contact with another organization known as Educational Scientific Publishers (hereinafter "ESP") and secured from ESP a number of commentaries and other literature with respect to similar family trust arrangements which were being attacked by the Internal Revenue Service in the courts. In general, these materials which petitioners received and read, beginning in late 1978, were commentaries prepared by ESP with regard to the facts of cases which were being litigated, together with explanations and discussions by ESP tending to draw distinctions between the litigated cases, which were generally unfavorable in their result to the taxpayers involved, and the family trust arrangements of petitioners' type. The tendency of these mailings received by petitioners was to continue to encourage subscribers to the ESP service to maintain their positions that the "family trust" device was legitimate and proper as a device for avoiding Federal income taxes. Petitioner *261 Roberta Andrews also attended a meeting sponsored by ESP in California in 1979, where the group was addressed by an alleged attorney who discussed the family trust device, and emphasized that gift tax returns should be filed in connection with family trust formations. At least in part as the result of this advice, petitioner Ira J. Andrews, Jr., filed a Federal quarterly gift tax return for the calendar quarter ending September 30, 1977, in which the gift of the ranch property was disclosed. In their individual joint income tax returns for the years 1977, 1978 and 1979, petitioners reported as income the respective amounts of $5,400, $6,300, and $8,400 as distributions to them from the Ira J. Andrews, Jr., Trust, beginning with June 1, 1977, but no other "trust" income. Upon audit of the trust returns as well as petitioners' individual returns for the years in issue, respondent determined that the income of the Andrews ranch was properly taxable to petitioners individually. As the result of respondent's various adjustments to petitioners' income, the above deficiencies were determined, together with additions to tax under section 6653(a), as indicated. Prior to trial, however, *262 petitioners conceded the issue of the validity of the family trust for income tax purposes, and the parties have stipulated that there are substantially reduced deficiencies in petitioners' income taxes for the years in issue in the respective amounts of $5,109.50, $9,282.40 and $10,563.68. [2] Thus, as noted above, the only issue left between the parties is the correctness of respondent's determination that petitioners are liable for additions to tax with respect to the resulting deficiencies under the provisions of section 6653(a). [3]
*263 Where, as here, respondent's determination of additions to tax under section 6653(a) is contained in his statutory notice of deficiency, the burden of proof is on the petitioner to show error in respondent's determination. ; Rule 142(a). Ultimately, the question is factual, and must be decided by the Court based upon a consideration of all the facts and circumstances. As the Court of Appeals well said in , affg. on this issue : "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." In determining a proper standard of care under section 6653(a), it is proper to look at the level of sophistication of the taxpayer whose actions are in question, see , affd. . In addition to other factors, a good faith reliance on competent counsel may avoid the addition to tax under section 6653(a), see . *264 Examining the totality of the facts in this case, we are persuaded that petitioners have met their necessary burden of proof and that the additions to tax for negligence should not be imposed. In arriving at this conclusion, we are principally influenced by the following circumstances: 1. Petitioners were ranchers with no apparent training or sophistication in tax matters. They lived on a ranch located in a remote part of Montana and had no apparent exposure to the developing income tax law as applied to family trusts, other than through the self-serving representations and literature of organizations like IOIRS and ESP, and the occasional attendance at meetings where they were addressed on the subject by speakers of questionable competence. The information received by them in the above manner could well have encouraged them to carry out the formation of a family trust and to keep faith in it during the period of years before us. 2. The nearest lawyer whom petitioners could consult with regard to the formation of their family trust was their regular attorney. The day after petitioners acquired their IOIRS materials, they made a 200-mile round trip to see this attorney and *265 asked his advice. In addition, petitioners employed a certified public accountant for the preparation of the 1979 trust income tax return, although petitioner Roberta Andrews had prepared the trust returns for the two prior years. 3. Finally, we must consider what the state of the law was concerning family trusts at the time petitioners filed their returns for the years 1977, 1978 and 1979. What should petitioners have been expected to know about the law at that time, and when should they have been expected to know it? At the time the returns herein were filed, the first family trust cases were beginning to appear, a small wave that later developed into a flood. See ; ; ; , affd. . None of these cases had yet been decided on appeal. , was decided just about the time the trust return for petitioners for the years 1979 was due to be filed, *266 and there is no evidence that they were aware of it. Thereafter, a host of cases involving the IOIRS/ESP type of family trust have been decided, universally disapproving the family trust device as a means of avoiding income taxes, so that it can now fairly be said that taxpayers would be negligent in putting their faith in such a flagrant tax avoidance scheme which has been repeatedly rejected by the courts, and that no reasonable person would have trusted such a scheme to work. See , affg. . All of this, however, was not clear in 1977, 1978 and 1979, and it does not seem fair to us to impute this knowledge to petitioners by hindsight. The present case is distinguishable from , where the taxpayer established an ESP trust after having consulted a lawyer and also a certified public accountant, both of whom advised him against it. Rather, we think this case on its facts is closer to . In that case, taxpayers purchased and used ESP materials in forming a family trust. *267 In addition, they took instruction sessions from ESP representatives and used a certified public accountant to prepare their returns. The taxpayers were both unsophisticated laymen. In that case we said: This is not a case where the taxpayers were astute business persons who should have been aware that the advice given was faulty. Based on the particular circumstances revealed by the record herein, we hold that petitioners are not liable for an addition to tax under section 6653(a) due to negligence and intentional disregard. However, we note that we may reach a contrary result in future cases involving similar circumstances, in view of the numerous decisions adverse to taxpayers which have been handed down by this and other courts subsequent to the years involved herein regarding the tax consequences of "family trusts. We repeat that admonition here, noting that petitioners herein have already conceded the issue as to the validity of the family trust scheme. The case is a close one, but on balance we conclude that additions to tax under section 6653(a) should not be imposed. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The parties have further stipulated that the above agreed deficiencies may be subject to further adjustment in the Rule 155 computation herein, if the income averaging provisions, secs. 1301 through 1305, are applicable. ↩
3. As it read in the years in issue, sec. 6653(a) provided as follows: (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes.-- If any part of any underpayments (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩