Darlene SWAYZE, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee,

Stuart MARTIN, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

Nos. 84–4375, 84–4376.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1985.

Decided March 21, 1986.

Barbara J. Rose, Milwaukie, Or., for plaintiffs-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Richard Farber, Paul E. Pelletier, Washington, D.C., for defendant-appellee.

Before TANG and FARRIS, CIRCUIT JUDGES, and KELLEHER,* District Judge.

KELLEHER, District Judge:

Darlene Swayze and Stuart Martin (appellants), both professional tax preparers, appeal from summary judgment in these consolidated actions. The IRS assessed

---

* Honorable Robert J. Kelleher, Senior District Judge for the Central District of California, sitting by designation.

penalties pursuant to 26 U.S.C. § 6694(a), charging that appellants had negligently or intentionally disregarded rules and regulations by preparing a number of so-called family trust tax returns. Appellants paid 15 percent of the assessed amounts and brought these refund actions. The district court granted summary judgment in favor of the government, holding that appellants failed to raise any genuine issues of material fact. We reverse.

## BACKGROUND

In each of the tax returns prepared by appellants for which a penalty was assessed ("penalized returns"), the amount of taxable income declared by the client/taxpayer was apparently reduced from what it would otherwise have been through the use of a family trust. A family trust is created by a taxpayer's placement in trust of designated income, assets and/or "lifetime services." Family members are designated as beneficiaries. Under present law, such an arrangement is ineffective for tax avoidance purposes; income taxable to the grantor will not escape taxation when diverted to the beneficiaries of a family trust. This was unclear, however, in 1977, 1978 and 1979, the years for which appellants prepared the penalized returns.[1]

Before preparing the penalized returns, appellants were contacted by the IRS. Through written correspondence and personal communication, the IRS informed appellants of the Service's view that the family trust was an artificial and invalid tax avoidance scheme. Nevertheless, appellants prepared family trust returns for their clients, using forms and step-by-step instructions supplied by the Institute of Individual Religious Studies ("IOIRS") and Educational Scientific Publishers ("ESP").

Appellants claim they had sought, obtained and relied upon the advice of competent lawyers and accountants regarding the validity of the family trust returns they were about to prepare. The government contends that appellants neither exercised due diligence in seeking out, nor displayed good faith in relying upon, the advice they received. On that point the record contains the following evidence.

Swayze testified in her deposition that she paid a local attorney, Brad Burke, for legal research and advice, and for helping her design the family trust device she later used. Swayze testified she contacted a number of reputable lawyers employed by IOIRS, among them one Peter Stomer. Swayze also testified she received advice from her husband following his consultation with attorney Donald Krause. She stated in her affidavit she met with Mr. Anderson, a CPA, and conferred about the validity of the family trusts. She also stated she received legal help from attorneys Ronald Hughes and Harvey Richelson. She further stated she read and relied on letters supplied to her by IOIRS which were written and signed by two other lawyers, John R. Rarick and Carroll M. Lawson. These letters appear in the record along with extensive promotional materials. Both letters formally expressed the opinion that the trusts she was using were legal and offered legitimate tax benefits.

Mr. Martin testified at his deposition that Walt Hutchison, CPA, advised him the family trusts he prepared were "valid taxable entities." Martin further testified he listened to and relied upon a taped seminar conducted by attorney Bayles and CPA Bill Mertsching, which analyzed and endorsed the specific type of family trusts he later prepared. Martin also claimed familiarity with and reliance upon IOIRS and ESP materials similar to those described by Swayze.

## ISSUE

The issue before the district court was whether appellants negligently or intentionally disregarded rules or regulations in preparing the penalized returns. The issue before us now is whether the district court

---

**1.** Swayze prepared family trust returns for 1977, 1978 and 1979. Martin prepared family trust returns only for 1978.

properly granted summary judgment, which turns on whether the record discloses genuine issues of material fact.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.*; Fed.R.Civ.P. 56(c).

## DEFENSE OF GOOD FAITH RELIANCE

■ Neither Swayze nor Martin is a lawyer or accountant, though, as laymen, they are permitted to prepare tax returns professionally under 26 U.S.C. § 7701(a)(36). Both appellants raise the defense of "good faith reliance on the advice of counsel or a qualified accountant...." *See Hanson v. Commissioner*, 696 F.2d 1232, 1234 (9th Cir.1983)[2]; *see also Leonhart v. Commissioner*, 414 F.2d 749, 750 (4th Cir.1969) (reliance justified if accountant is independent and fully apprised of circumstances of transactions).

Appellants assert this defense to refute the charge of negligent or intentional disregard. First, appellants attempt to establish that by seeking out professional advice they exercised due care in their investigation into the validity of the family trust device. Secondly, appellants claim reliance on the advice they obtained and seek to establish the *bona fides* of the position they took as to the legal correctness of the penalized returns. *See* 26 C.F.R. § 1.6694–1(a)(4) (good faith belief with reasonable basis defeats charge of intentional disregard).

Appellants maintain that their depositions and affidavits contain sufficient evidence from which a rational jury could infer they had sought, obtained and relied on competent professional advice. This, they argue, creates genuine fact issues material to the defense of good faith reliance. The government disputes appellants' good faith on two grounds.

First, the government argues that most of the lawyers and accountants named by appellants were affiliated with IOIRS or ESP. Secondly, the government argues that appellants' primary motive in preparing family trust returns was obviously the collection of higher fees.

On the first point, the record indicates some, but not all, lawyers and accountants relied on by appellants were affiliated with family trust promoters. The record reveals little concerning the nature of those affiliations. In any event, it is the jury's province to evaluate whether, and to what degree, lawyers' or accountants' affiliations diminish the reliability of their advice. Similarly, it is the jury's province to decide whether and what inferences should be drawn from the manner in which advice is rendered or paid for.

As to the second point, appellants' profit motive, the record discloses only that family trust returns generated larger gross fees, not larger net earnings, than other returns. Even assuming family trust returns were more profitable, it is the province of the jury to decide whether and what inferences should be drawn from that fact.

## PER SE VIOLATION

■ Notwithstanding appellants' prima facie showing of due diligence and good faith reliance, the government argues that summary judgment was proper. In effect, the government urges, preparation of family trust returns is unreasonable *per se* and hence automatically penalizable under § 6694(a). Were that the case, evidence showing subjective diligence or good faith might raise genuine disputes of fact, but the issues would not be material. It would perforce be irrational for a jury to fail to

---

2. *Hanson* involved a penalty assessed under 26 U.S.C. § 6653(d). Congress has indicated that 26 U.S.C. § 6694(a) is to be interpreted in a manner similar to § 6653(a). *See* H.R.Rep. 658, 94th Cong.2d Sess. 278, (1975).

find appellants had negligently or intentionally disregarded rules or regulations.

At oral argument, in colloquy with counsel, the district court analogized appellants' belief in family trusts to a belief that the earth is flat. In line with this reasoning, the government supports its *per se* position with the following language from *Hanson* :

> As a matter of fact the court below found that no lawyer or accountant advised the Hansons that the trust would produce the desired tax advantage. *No competent lawyer could.*
>
> Moreover, the Tax Court found that the Hansons were patently negligent in putting their faith in this "flagrant tax avoidance scheme" repeatedly rejected by the courts. *No reasonable person would have trusted this scheme to work.*

696 F.2d at 1234 (emphasis added.) *See also Neely v. United States,* No. 775 F.2d 1092 (9th Cir.1985) (unsettled state of law does not preclude finding of negligence). *Hanson,* however, does not control this case for a number of reasons.

First, the *Hanson* court *found* the Hansons' actions to be "patently negligent." Unique facts, established through trial on the merits, supported this finding. For example, the Hansons had filed, in state court, a marital agreement, "which divided their personal effects in total disregard of the trust." 696 F.2d at 1233. Swayze and Martin, by contrast, were denied trial on the merits and the district court made no findings.

Secondly, it was established at trial that the Hansons failed to obtain or rely on the advice of lawyers or accountants. Swayze and Martin, by contrast, adduced sufficient evidence to raise the defense of good faith reliance on professional advice.

Finally, the observation in *Hanson* that family trust returns have been repeatedly rejected by the courts refers to cases which had not yet been decided in 1977–1979. Preparation of family trust returns for

1985 would constitute negligent or intentional disregard *per se,* and could be penalized regardless of the preparer's subjective diligence or belief. However, appellants' claimed investigation into, and belief in the validity of, family trust returns must be evaluated in light of the chronological development of family trust caselaw, particularly as of the time appellants prepared the penalized returns.

## CHRONOLOGY OF FAMILY TRUST CASELAW

Before 1980 there was little caselaw on family trusts. *See Andrews v. Commissioner,* 50 T.C.M. (CCH) 555 (1985) (citing only *Wesenberg v. Commissioner,* 69 T.C. 1005 (1978); *Damm v. Commissioner* T.C.M. (CCH) 793 (1977); *Horvat v. Commissioner,* 671 F.2d 990 (7th Cir.1978) ). "Thereafter a host of cases involving the IOIRS/ESP type of family trust have been decided, universally disapproving the family trust device as a means of avoiding income taxes." *Id.*

The first appellate level family trust decisions were not reported until 1982. *See Schulz v. Commissioner,* 686 F.2d 490, 491 (7th Cir.1982) (these family trust appeals "are the tip of an iceberg.")

*Wesenberg, Damm* and *Horvat* are the only pre-1980 cases cited by the government which invalidated a family trust return. However, *Horvat* was not available for citation or reliance until 1982 when the opinion was published.[3]

*Wesenberg* (which, the government concedes, was decided *after* some of the penalized returns were prepared) and *Damm* are just two trial level cases from one court. They do not constitute the repeated rejection by courts noted in *Hanson.*

In *Andrews,* a case similar to the instant appeal, the Tax Court relied on the chronological development of family trust caselaw to reject the same arguments the government makes here.

---

**3.** *See Schulz v. C.I.R.,* 686 F.2d 490, 491 n. 1 (7th Cir.1982). This circuit has a similar rule, 9th Cir.R. 21.

We must consider what the state of the law was concerning family trusts at the time the petitioners filed their returns for 1977, 1978 and 1979. What should petitioners have been expected to know about the law at that time, and when should they have been expected to know it?

. . . .

It can *now* fairly be said that taxpayers would be negligent in putting their faith in such a flagrant tax avoidance scheme which has been repeatedly rejected by the courts, and that no reasonable person would have trusted such a scheme to work.

*All of this, however, was not clear in 1977, 1978 and 1979, and it does not seem fair to us to impute this knowledge to petitioners by hindsight.*

50 T.C.M. (CCH) at 558. (emphasis added) (citations omitted). The Tax Court in *Andrews* not only found triable issues—which is all appellants here must show—but ultimately decided the Andrews were not negligent in preparing and filing IOIRS/ESP type family trust returns.

### PROFESSIONAL TAX PREPARER STATUS

It is true that appellants, as professional tax preparers, might be expected to know more about tax laws than the Andrews, who owned a ranch. However, relative sophistication is a fact issue and may vary dramatically among professional tax preparers. Any person who prepares a substantial portion of an income tax return for compensation is automatically classified as an income tax preparer under 26 U.S.C. § 7701(a)(36)(A). Federal law does not impose "professional" skill requirements.

The government has presented no evidence, and we are certainly unable to take judicial notice, of any uniform standard of expertise or professionalism among the variegated and ill-regulated body of entrepreneurs who ply the trade of income tax preparation. Further, tax preparer status under § 7701(a)(36)(A) neither suggests nor confers a standard of legal competence.

We must bear in mind that we address the narrow issue of whether the government has demonstrated absence of genuine issue of fact sufficient to justify the entry of summary judgment against each of these individual appellants.

The record shows Swayze never went to college; Martin's entire tax training consisted of thirty accounting credit hours at Weber State College along with some H & R Block courses. Hence, appellants were entitled, if not required, to obtain and rely on the opinions of lawyers and accountants. They enjoy a lay status in relation to those two professions. The validity of their "good faith reliance" defense rests on the quality and objectivity of professional advice which they obtained. These questions generate issues of fact suitable for trial.

Appellants' negligent or intentional disregard of the law, if proven at trial, shall not be condoned. However, we agree with *Andrews* that the preparation of family trust returns for 1977, 1978 and 1979 was not a *per se* violation automatically penalizable under § 6694(a).

### TRUE EARNER DOCTRINE

The government also invokes the long-standing principle that income must be taxed to its true earner. *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). Yet appellants have never claimed ignorance of this fundamental principle. Instead, they argue that reference to *Lucas v. Earl* merely restates the issue of family trust validity.

In *Rubin v. C.I.R.*, 429 F.2d 650, 653 (2d Cir.1970), Judge Friendly addressed a similarly sweeping application of *Lucas v. Earl*:

References to "substance over form" and the "true earner" of income merely restate the issue in cases like this: Who is the "true earner"? What is substance and what is form? Moreover, they do so in a way which makes it appear that these questions can be answered simply by viewing the facts with appropriate suspicion.

Likewise, the government's depiction of family trusts as "flagrant schemes" concludes rather than furthers analysis.

## CONCLUSION

We find the record discloses genuine issues of fact. These issues are material to the appellants' claims of diligence in investigating, and good faith belief in the validity of, the family trust returns they were penalized for preparing. Therefore we reverse and remand.