**Robert C. APARICIO, Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY CO., Defendant.**

**No. 3:93 CV 7261.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 28, 1994.

H. Brann Altmeyer, Phillips, Gardill, Kaiser, Boos & Hartley, Wheeling, WV, Robert N. Peirce, Jr., Mark Coulter, Robert N. Peirce, Jr. & Associates, Pittsburgh, PA, for Robert C. Aparicio.

David W. Stuckey, Robison, Curphey & O'Connell, Toledo, OH, for Norfolk Southern Ry. Co.

Peter R. Casey, III, Eastman & Smith, Toledo, OH, for Peter Casey.

## MEMORANDUM OPINION

KATZ, District Judge.

Plaintiff, formerly an employee of defendant railway, sued Defendant for damages as a result of injuries sustained while working as a laborer, primarily as a member of a crew responsible for repairs to track and rail crossings. That type of crew is referred to as a "maintenance of way" crew. The action was brought under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* This case came before the Court for a trial by jury. At the close of the Plaintiff's case, the Defendant moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. That motion was granted, and this Memorandum Opinion sets forth in brief the reasons for this Court's granting a directed verdict in favor of the Defendant.

### A. Statement of Facts

Plaintiff began working for Defendant in 1976, and continued to work for Defendant in various capacities until early January of 1994. Between 1987 and 1990, Plaintiff's job involved primarily driving and operating track machinery. Since 1990, he has worked as a laborer on the maintenance of way crew. This job is a labor intensive position, requiring Plaintiff to use hand operated tools and equipment, including power tools, that expose him to shock and vibration.

In 1987 Plaintiff visited his physician, Dr. John Osborne, complaining of numbness and tingling in both wrists. Dr. Osborne told Plaintiff that he suffered from carpal tunnel syndrome and advised him to wear splints. Plaintiff did so, and returned to work after six weeks.

In February 1992 Plaintiff consulted Dr. Osborne again regarding pain in his hands and wrists, and Dr. Osborne sent him to Dr. Patrick Murray, an orthopedic surgeon. Dr. Murray treated Plaintiff first for carpal tunnel syndrome, eventually performing four surgeries on Plaintiff. Plaintiff returned to work May 1, 1992. He began experiencing elbow pain during the summer of 1993, was treated conservatively by Dr. Murray who diagnosed medial and lateral epicondylitis of the right elbow. After several months of that conservative treatment, on January 4, 1994 Dr. Murray concluded Plaintiff could not return to work. Plaintiff has not returned to work since January of 1994.

Plaintiff filed this suit in May of 1993, alleging in his complaint that he was exposed to excessive and harmful cumulative trauma to his hands, wrists, and arms due to the equipment with which he performed his work for the Defendant. Plaintiff claims that the negligence of Defendant during his employment caused his injury. Specifically, Plaintiff states that Defendant was negligent in the following 16 particulars:

(1) In failing to use ordinary care to provide plaintiff a reasonably safe place in which to work;

(2) in failing to comply with the applicable government regulations;

(3) in failing to take any effective action to reduce the amount of repetitive trauma of the upper extremities to which Plaintiff was exposed;

(4) in failing to periodically test employees such as Plaintiff for physical effects of repetitive trauma to the upper extremities, and failing to take appropriate action including advising the plaintiff as to the test results;

(5) in failing to exercise reasonable care to adequately warn plaintiff of the risks, dangers and harm to which he was exposed in working with and around repetitive trauma to his upper extremities;

(6) in negligently requiring and/or allowing the plaintiff to be exposed to dangerous levels of repetitive trauma to the upper extremities when it knew of the risks thereof;

(7) in negligently failing to inspect or monitor the occupational repetitive trauma in the job duties where the Plaintiff was required to work;

(8) in negligently failing to warn the Plaintiff of the risk of carpal tunnel syndrome or other repetitive trauma injuries as a result of exposure to repetitive occupational trauma to the upper extremities;

(9) in negligently failing to provide the plaintiff with protective equipment designed to protect him from carpal tunnel syndrome or other repetitive trauma injuries as a result of exposure to repetitive occupational trauma to the upper extremities;

(10) in negligently providing the Plaintiff and those working around him with equipment which the Defendant knew or should have known caused carpal tunnel syndrome or other repetitive trauma injuries as a result of exposure to repetitive occupational trauma to the upper extremities;

(11) in negligently failing to employ safe working practices;

(12) in negligently failing to promulgate, issue, circulate and/or enforce adequate safety rules regarding avoiding repetitive trauma injuries, especially those to the upper extremities;

(13) in negligently failing to modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate cumulative traumas to which the Plaintiff would be exposed;

(14) in negligently failing to make reasonable efforts to ascertain the risks and hazards of repetitive trauma and repetitive trauma disorders;

(15) in negligently failing to monitor Plaintiff's work habits to determine if his work activities placed him at risk for suffering a repetitive trauma injury; and

(16) in negligently failing to use due care and caution required under the circumstances.

(Complaint at 3–4.)

This case came before the Court on December 19, 1994 for a jury trial on the issue of whether the plaintiff's epicondylitis and his carpal tunnel syndrome were caused by the negligence of Defendant.[1] At the close of Plaintiff's case on December 21, 1994, this Court directed a verdict for the Defendant.

## B. *Law*

### 1. *Rule 50 Standard*

Federal Rule of Civil Procedure 50(a)(1) states as follows:

If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law

---

**1.** Defendant had previously moved for summary judgment. Such motion was granted with respect to the questions of whether plaintiff was aware in 1987 that his wrist condition was work-related, and whether the 1992 instance of carpal tunnel syndrome was an aggravation of a continuing injury for which he can recover damages. The motion, however, was denied regarding the issue of whether the 1987 instance of carpal tunnel syndrome was a separate illness or injury from the 1992 instance of carpal tunnel syndrome.

against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

In ruling on a motion for judgment as a matter of law, the Court should neither weigh the evidence, evaluate the credibility of the witnesses, nor substitute its judgment for that of the jury; rather, it must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir.1994) (citing *Agristor Leasing v. A.O. Smith Harvestore Products,* 869 F.2d 264, 268 (6th Cir.1989)). " 'Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict.' " *Id.* (citing *Lewis v. City of Irvine,* 899 F.2d 451, 454–55 (6th Cir.1990); *Marsh v. Arn,* 937 F.2d 1056, 1060 (6th Cir.1991)). In an FELA case a defendant's motion for a directed verdict may be granted where the record is barren of any evidence tending to prove negligence on the part of the defendant employer. 11 Fed.Proc.L.Ed. § 30:60.

### 2. *The Federal Employers Liability Act*

The FELA governs the liability of common carriers by railroad in interstate or foreign commerce for injuries to employees from the negligence of the employer. 45 U.S.C. § 51. Section 1 of the FELA provides as follows:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. Thus, Plaintiff was injured because of his work for the railroad, and if the Defendant's negligence played any part in causing his injury, then the Plaintiff is entitled to reasonable compensation for his injuries.

The FELA is neither a no-fault insurance policy nor is it a workers compensation law. In contrast to the requirements of such legislative creations, proof by a preponderance of the evidence of the defendant's negligence is a prerequisite to any recovery whatsoever under the FELA. Contributory negligence, however, does have a role under the FELA. Pursuant to section 3 of the FELA, the contributory negligence of a railroad employee is not a bar to recovery but damages are to be diminished by the jury in proportion to the amount of negligence attributable to the employee. 45 U.S.C. § 53.

■ The test as to the sufficiency of the evidence to present a case to the jury in an action under the FELA is whether the proof, even though entirely circumstantial, justifies with reason the conclusion that the employer's negligence played even the slightest part in producing the injury or death for which damages are sought. When this test is met, when negligence is found, the Court must find that a jury case exists notwithstanding the fact that from the evidence the jury might also, on grounds of probability, reasonably attribute the result to other causes, including the employee's contributory negligence. *Rogers v. Missouri P.R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

■ In general, the plaintiff in an FELA action has the burden of showing facts sufficient to justify recovery under the FELA. Specifically, the Plaintiff must prove by a preponderance of the evidence:

(1) that the defendant owned and operated a common carrier railway and was engaged in interstate or foreign commerce;

(2) that the injured employee was employed by the defendant in interstate or foreign commerce;

(3) that the injured employee was engaged in interstate commerce at the time of the injury or was engaged in activities in furtherance of, or directly or closely and substantially affecting, interstate commerce;

(4) that the defendant was negligent and that such negligence was a cause, in whole or in part, of the incident;

(5) that the incident in question was or should have been foreseen by the defendant; and

(6) damages.

11 Fed.Proc.L.Ed. § 30:60. In the instant case only the last three of these elements are contested. Because the Court directed a verdict on the issue of liability, damages need not addressed. Negligence and foreseeability will be discussed herein.

While not at issue for purposes of considering the basis for this directed verdict, the statute of limitations questions which arose in this case create serious legal and policy issues under the FELA. Cumulative trauma disorders by definition do not arise as the result of a single act or incident; that fact raises at least two significant questions: first, are such disorders intended by Congress to be covered by the FELA, and second, when does the three year statute of limitations begin to run? In the instant case the Plaintiff was diagnosed with carpal tunnel syndrome in 1987, treated without surgical intervention and released for work; in early 1992 he was again diagnosed with the same disorder and operations were performed on both wrists. The evidence is conflicting as to when Plaintiff became aware of the second occurrence; he testified it was sometime in 1991, while his treating physician related that Plaintiff advised him that he had been suffering pain in his wrists for two to three years prior to seeking treatment in February 1992. Did the statute of limitations begin to run in 1987; when the first twinge of pain was felt, in 1989, 1990 or 1991; or, when the pain became "significant" or so severe Plaintiff sought medical assistance? These are issues for another day or case.

### 3. Negligence and Foreseeability

Negligence is generally defined as an unintentional act or omission in violation of a legal duty, which act or omission results in injury to person or property. Negligence consists of the failure of the defendant to perform in accordance with a duty owed to the plaintiff. The standard of care is generally that of a person exercising ordinary care under the same or similar circumstances. Additionally, there must be a causal relation between the act or omission, the negligence, and the injury alleged to have occurred as a result of that negligence.

Applying these general principles of negligence to the instant case, it was the continuing duty of the Defendant, as an employer, to use ordinary care under the circumstances to furnish Plaintiff with a reasonably safe place in which to work; to provide Plaintiff with safe and suitable equipment for the assigned work; to promulgate clear and unambiguous safety rules for the safe performance of the assigned work; to provide a safe method for the performance of the assigned work; to provide adequate guidance, assistance and training for the safe performance of the assigned work; and to use ordinary care under the circumstances to maintain and keep such place of work, including the work methods, tools and equipment, in a reasonably safe condition.

It was also the duty of Defendant railroad to make and to publish to its employees such sufficient and necessary rules and regulations and prescribe such proper and adequate procedures for them to follow as reasonable care required under the circumstances and conditions known then and there to exist. The failure, if any, of Defendant to issue and enforce such rules may be considered as evidence of Defendant's negligence.

This does not mean, of course, that the employer is a guarantor or an insurer of the safety of the place to work. Defendant is not bound to anticipate every possible incident or accident which might occur, because a railroad is necessarily attended by some danger and it is impossible to eliminate all danger. The law does not make the defendant an insurer of the safety of its employees, nor of the safety of the places in which they work.

Additionally, in order to prevail in this case, the Plaintiff was required to establish that the Defendant, through its officers, agents or employees, using ordinary caution and prudence, should have foreseen that some injury would probably arise from their acts or omissions. The test of foreseeability is whether, in light of all the circumstances, a reasonably prudent railroad should or could reasonably have anticipated that some injury

would result to an employee under the circumstances, at said time and place, from any act or negligence of the Defendant. The Defendant cannot be found negligent for failing to guard against a bare possibility of injury, illness or disease.

Before the Defendant can be charged with negligence in failing to provide a reasonably safe place to work, Plaintiff must prove that the Defendant knew, or in the exercise of ordinary care, should have known that an unsafe condition existed and had a reasonable opportunity either to warn Plaintiff of such condition or to remedy same.

### C. *Discussion of Negligence in This Case*

█ Plaintiff himself testified as to the nature of his work, the injuries he alleges resulted from those labors, and the damages he has incurred and expects to incur in the future. He did not testify as to any incident or even a series of incidents which gave rise to the injuries, but merely described the tasks performed in his work for the railroad which resulted, he alleges, in two cumulative trauma disorders—carpal tunnel syndrome and epicondylitis, otherwise known as "tennis elbow."

Dr. Patrick Murray, Plaintiffs attending orthopedic surgeon, testified by video deposition regarding his patient's symptoms, the treatment, and the possible causes of the injuries. Dr. Murray received all of his information concerning the causes of the Plaintiff's injuries from the Plaintiff, and testified that the injuries were consistent with the nature of the work that Plaintiff performed for the Defendant. However, Dr. Murray indicated both in his written report and at his deposition that it was difficult to determine the *cause* of the injuries of which Plaintiff complained. Dr. Murray also testified that "this condition also appears to develop frequently in patients without any obvious cause." He further indicated that he could not express an opinion to a reasonable degree of medical certainty that the manner in which the Plaintiff was required to perform his job contributed to either carpal tunnel syndrome or epicondylitis.

Plaintiff attempted to prove Defendant's negligence and causation through Robert Anders, Ph.D. Dr. Anders is an ergonomist. Defendant objected to the entirety of Dr. Anders' testimony, relying on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The field of ergonomics, generally as applicable to this case, considers the risk factors in the performance of the various tasks required to perform work activities which could lead to the cumulative trauma disorders at issue. Dr. Anders is an acknowledged expert in ergonomic bioengineering.

In concluding the Court's opinion in *Daubert,* Justice Blackmun stated:

> To summarize: "general acceptance" is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.

*Daubert,* —— U.S. at ——, 113 S.Ct. at 2799.

The Court overruled Defendant's objection and permitted Dr. Anders to testify. It should be noted, however, that there is significant disagreement among trial courts as to the propriety of admitting the testimony of ergonomists and this Court is not persuaded that such testimony should be admitted, given the "conclusions" reached by the witness based upon the knowledge within the field as relevant to the issues in the instant case.

The only credible evidence of negligence and causation is the assertion of Dr. Anders that a body of scientifically based data existed in the 1970s and certainly by the early 1980s that the injuries here complained of *could* and often do result from, among other things, stresses and strains caused in the workplace by repetitive activities, jarring, etc. or repeated impacts which cause cumulative trauma disorders, such as the carpal tunnel syndrome and epicondylitis of which Plaintiff complains.

Plaintiff contends through Dr. Anders that there was a well-established list of "risk factors" for cumulative trauma disorders.

These risks, when combined in the performance of tasks required to perform a job, create the danger of developing carpal tunnel syndrome and epicondylitis, among other cumulative trauma disorders. However, there is no evidence as to the amount of pressure or repetition which is necessary to cause the injuries complained of here. Nor is there evidence that Defendant knew of the injuries of Plaintiff or any other workers prior to the date of the incidents complained of in this case; that is, prior to 1991 or 1992. Further, according to Dr. Anders, there is no scientific evidence as to how much reduction in the repetitive actions—lifting, pulling, jarring, etc.—is required to eliminate the probability of these types of cumulative trauma disorders.

The negligence here complained of is the failure of Defendant to redesign job functions or tasks and advise workers of the risks attendant to the types of jobs which Plaintiff performed. There was, however, no evidence of notice to Defendant other than generally the ergonomic body of literature which addresses the types of risks which could lead to workers developing cumulative trauma disorders, as opposed to the specific jobs performed by Plaintiff. Plaintiff presented no evidence of great numbers of, or even any, complaints of workers to Defendant prior to the injury or injuries complained of by the Plaintiff in this case. Additionally, Plaintiff and his witnesses conceded that there are no standards adopted by the Federal Railroad Administration relative to the risks described by Dr. Anders as incurred in the tasks or jobs here at issue.

The evidence indicates that almost every type of repetitive task or job exposes one to the risk of carpal tunnel syndrome, epicondylitis, or other cumulative trauma syndrome. These risks occur in our daily life, including activities around the at home and in sports. Plaintiff, in fact, testified that for several years he rode and still rides a Harley–Davidson motorcycle, the operation of which includes the risks described by Dr. Anders. Testimony established that the type of hand motion involved in riding a motorcycle is a risk factor which could lead to cumulative trauma disorder. There is simply no legally sufficient evidentiary basis for a reasonable jury to conclude that the Plaintiff's work for the Defendant caused his condition, much less that Defendant's negligence caused his condition.

To summarize, Plaintiff had the burden to prove that the design of his work assignment constituted negligence on the part of Defendant; that such negligence caused the injuries of which he complains; that such injuries were foreseeable; and, finally, that Defendant had notice of the "dangerous conditions" of the workplace and an opportunity to cure. Plaintiff has failed to carry that burden. There has been no showing of notice; there was no medical evidence of causation nor was the testimony of Dr. Anders of that degree of certainty to carry Plaintiff's burden of proof relative to causation; and, finally, the mere showing through Dr. Anders that there was evidence that the work included methodology giving rise to the "risk" of incurring cumulative trauma disorder fails to achieve the level to be deemed negligence under the FELA. The negligence alleged—that the Defendant failed to reduce those "risks"—cannot be recognized as such for multiple reasons, including the fact that Plaintiff's experts testified that the knowledge permitted them to delineate risks but not to determine how much reduction of each risk factor was necessary to eliminate exposure to cumulative trauma disorders.

There has been no showing that the Defendant failed to provide a safe place to work or to promulgate and enforce reasonable work rules. Plaintiff admits there are no specific standards which can or could be adopted by Defendant which with certainty would have eliminated Plaintiff's injuries. The Court concludes that even considering the testimony of Dr. Anders, Plaintiff failed to meet the burden of proving that his injuries were either foreseeable by Defendant or resulted from its negligence. In light of the foregoing, judgment as a matter of law in favor of the Defendant is appropriate.

IT IS SO ORDERED.