Gary L. BROOKS, Plaintiff,

v.

BURLINGTON NORTHERN RAILROAD, Defendant.

No. C94–1349GW.

United States District Court, W.D. Washington.

Dec. 14, 1995.

Rexanne Gibson, Kroschel & Gibson, Bellevue, WA, for Defendant.

William H. Waechter, Kargianis Watkins Marler, Seattle, WA, for Plaintiff.

## AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILSON, United States Magistrate Judge.

In accordance with the provisions of 28 U.S.C. § 636(c), Plaintiff and Defendant waived their right to proceed before a Judge of the United States District Court and consented to have a United States Magistrate Judge conduct all proceedings in this case and to order the entry of a final judgment.

Defendant Railroad has moved for summary judgment on the case, arguing that it is entitled to judgment as a matter of law, since, it is contended, Plaintiff has presented no proof of negligence on the part of Defendant or of the foreseeability of Plaintiff's injuries. Having reviewed the pleadings and the filings in this case, and having heard oral argument on this issue, the Court GRANTS Defendant's motion for summary judgment.

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Swayze v. United States*, 785 F.2d 715, 717 (9th Cir.1986) (citing Fed. R.Civ.P. 56(c)). The standard provided by Rule 56 requires not only that there be *some* alleged factual disputes between the parties, but also that there be *genuine* issues of

*material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Genuine issues are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Material facts are those which might affect the outcome of the suit under governing law. *Id.*

■ When a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party may not rest upon the mere allegations or denials of prior pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If the non-moving party does not so respond, summary judgment, if appropriate, shall be rendered in favor of the moving party. *Id.*

■ Plaintiff, a locomotive engineer and employee of Defendant Railroad, brought this action under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.), contending that the Railroad had been negligent in providing him with a safe place to work, resulting in his developing carpal tunnel syndrome in his hands and arms. It is Plaintiff's contention that the repetitive work using his hands and arms, which (he maintains) was necessary to perform his duties as a locomotive engineer, caused the carpal tunnel syndrome from which he suffers.

The evidence presented to the Court on this issue includes the deposition testimony of Plaintiff, the deposition testimony of his treating physician/medical expert (Dr. Edward Almquist, M.D.), and a declaration by Theodore Becker, Ph.D., a human performance specialist and physical capacity evaluator.

Plaintiff testified that he has been a locomotive engineer with the Railroad since approximately 1978, and that he worked for Defendant in other capacities not relevant to this issue for several years before he became an engineer. It is his testimony that he first noticed difficulties developing in the use of his arms and hands in approximately July of 1994. Plaintiff testified that none of his physicians had told him that his work caused the carpal tunnel syndrome, but that Dr. Almquist had told him that extensive use of his hands in his job could have caused it.[1] Plaintiff testified that he did not and does not use his hands extensively other than at work, and currently gets most of his exercise from walking.

Dr. Almquist, who has treated Plaintiff and is an expert witness for the plaintiff, testified by deposition on June 5, 1995 ("Almquist Dep."). It was his testimony that he had performed carpal tunnel surgery on Plaintiff's left hand on May 17, 1995, a procedure which he performed in his office, and that Plaintiff was scheduled to have similar surgery on the other hand within the next few weeks following the deposition. He testified that it was his belief that the cause of Plaintiff's carpal tunnel syndrome was "increased pressure in the carpal tunnel." (Almquist Dep. at 21). He testified that the "source" of the "increased pressure" was "some kind of hand activity." (*Id.*) He refused, however, to definitively relate Plaintiff's carpal tunnel syndrome to any activity at work. His testimony on these issues is reproduced in pertinent part:

Q. And any activity at work on which you ...?

A. There's probably not any one thing that people do that cause [sic] carpal tunnel [syndrome]. There is a lot of press about computer operators have carpal tunnel. It's probably not any more than many people. Some people when they use their hands a lot get carpal tunnel. And exactly what that is, what kind of motion, don't know. And I don't think anyone does.

Q. Because of the fact that some people get Carpal Tunnel Syndrome when they

---

1. Q. And have any of your doctors told you that, in fact, your work at the Railroad has caused the Carpal Tunnel Syndrome?
A. I don't know. He said extensive use of my hands in my job could cause it. And that was Dr. Almquist.

Q. And is that something that he said to you?
A. Yes.
Q. Did Dr. Haynes make any comments to you about what he thought caused it?
A. No. (Deposition of Gary Brooks, April 11, 1995, p. 12)

use their hands, does that necessarily mean that what they are doing with their hands is causing the Carpal Tunnel Syndrome?

A. Well, it's by and large activity related. If they don't use their hands the symptoms will subside considerably. And it usually comes on after they've been fairly active with their hands. The assumption is that it's the activity that builds up that stuff that we saw around the tendons as synovium. Builds up more in some people. Some people probably have smaller carpal tunnels. But there is very little direct correlation with either the activity level or what causes it.

Q. Are you familiar with the scientific literature in the subject of Carpal Tunnel Syndrome?

A. Reasonably.

Q. And is there anything in the scientific literature which shows the level of activity necessary to induce Carpal Tunnel Syndrome?

A. Well, at least nothing that is very universally accepted.

Q. So there is nothing that's generally accepted in the scientific community?

A. There is a lot of early studies on meat operators in packing plants in the midwest with high Carpal tunnel. And there has been hundreds, literally, I looked this up when we presented some stuff on Discovery Channel Television. I looked up, the computer way of looking at all the research. My computer was going for all night resourcing it. Anything you wanted to know about Carpal Tunnel. If someone has done a project to correlate to meaningful data, it's pretty minimal. There is tons of things that says therapy helps it, therapy doesn't help it. Vitamin C helps is, Vitamin B12 helps it. Just myriads, a lot of kind of naturopathic kinds of things.

In terms of ergonomic studies, as to what the level of whatever you want to quantify ergonomics is, pretty sketchy. And a guy that's done a lot of work on that is Dean Lewis at the University of Michigan. And he writes on repetitive stress syndromes. And there is a big question of whether this is a reality or not. And whether we should use those terms and such. We don't like them.

Q. You don't like him?

A. No, we like Dean Lewis. He's a very good objective guy. Yeah, he's—yes, he's Vice President of the American Society of Surgery of the Hand. Big organization for the Hand Society, hand group.

But I don't think anyone has very hard data as to why some people get—what level of activity is necessary. It must vary tremendously on factors. Middle age women who smoke, and who are heavy are the highest incidents factor. But other than that there is no . . .

. . . .

Q. Would you agree that that's pretty much the state even today?

A. Say that again now?

Q. Basically the levels of force, the repetition, wrist posture, that will enduce the onset of Carpal Tunnel Syndrome, are not known?

A. What is the level of threshold. The level of threshold is not known and probably varies dramatically with individuals.

Q. So we don't really know how much activity a person can be subjected to without unreasonably increasing the risk of inducing Carpal Tunnel Syndrome?

A. I believe that's true.

Q. And when you say that to a reasonable medical certainty you think that the Carpal Tunnel Syndrome in Mr. Brooks was induced by activity. Do you have any reason to think that it was induced by activity at work?

A. Only that he tells me that he uses his hands, that's the most active thing with his hands.

Q. But you have no scientific basis for knowing the amount of activity that was necessary to induce that in this individual, is that right?

A. That's true.

(Almquist Dep. at 21–26).

Defendant moved for summary judgment after the discovery cutoff date in the case,

citing the testimony of Plaintiff and his medical expert and contending that it was entitled to judgment as a matter of law, there being no evidence of negligence on its part or of the foreseeability of Plaintiff's injuries. In response to Defendant's motion, Plaintiff presented the declaration of Dr. Becker, a Doctor of Human Performance, who Plaintiff identified as an expert it intended to call. The proffered declaration of Dr. Becker states that he has previously examined a locomotive operated by *another* plaintiff (not Brooks), that he is aware of the hand and wrist positions related to locomotive operation, and that he is of the opinion that the biomechanical factors involved in locomotive operation are of a type causing carpal tunnel disorder. (Declaration of Theodore Becker, August 7, 1995.)

█ In reply, Defendant Railroad contends that Dr. Becker's evidence is not admissible, since Plaintiff failed to timely identify him as an expert witness as required by the Local Rules of this Court. The Court agrees with the Railroad that Dr. Becker's testimony is not admissible evidence because he was not properly and timely identified as an expert by Plaintiff, as required by Local Rule 16(f).[2]

Trial in this case is set for October 23, 1995. The scheduling order originally entered by United States District Court Judge Coughenour on December 20, 1994 (docket # 7) directs counsel to be guided by Local Civil Rule 16, which in turn requires that all experts be identified not later than 120 days before trial. On January 25, 1995, following their consent to the trial of the case by a Magistrate Judge, the Court (Magistrate Judge Wilson) held a status conference with counsel in this case, in which it adopted and reaffirmed the schedule imposed by Judge Coughenour. (Docket # 10). Accordingly, Plaintiff was required to identify all experts by 120 days before trial, or not later than June 23, 1995, if requested by Defendant.

It is not contested that on April 3, 1995, Defendant served Interrogatories and Requests for Production on Plaintiff, including Interrogatory 4, in which Plaintiff was asked to "Identify each person you expect to call as an expert witness." It is also uncontested that Plaintiff did not respond to this Interrogatory, (or to any of the other interrogatories propounded) and did not otherwise make known to Defendant before June 23, 1995, its intention of calling Dr. Becker, as required by the Local Rules and the Order of this Court. Plaintiff did not identify Dr. Becker, by name or otherwise, until August 7, 1995, some six weeks after the discovery cut-off date, when Plaintiff filed his opposition to the Motion for Summary Judgment.

The Court scheduled oral argument on this Motion in part to provide Plaintiff an opportunity to explain why he had not timely named Dr. Becker as an expert. Plaintiff's counsel's response to this question in oral argument was that counsel's file contained no explanation for the lapse, and it could only be attributed to oversight and/or inadvertence on the part of counsel. For the first time, counsel orally moved to amend the scheduling order to permit Plaintiff to name and call Dr. Becker.

Given the record, the Court will not permit Plaintiff to call Dr. Becker as an expert in this case. The Federal Rules of Civil Procedure and the Local Rules governing discovery in this Court have as their central purpose the orderly exchange of information between and among parties. Plaintiff did not follow those Rules here, and has presented no good reason for not doing so.[3][4]

---

2. (f) Completion of Discovery
   Not later than 120 days prior to the trial date, unless otherwise ordered by the court, all counsel shall exhaust the discovery procedures provided for in rule 26 through 37, Federal rules of Civil Procedure. Interrogatories, requests for admissions or production, etc., must be served sufficiently early that all responses are due before this deadline. Any motion to compel discovery shall also be filed and served on or before this deadline.

3. In oral argument, Plaintiff noted that Dr. Becker had been called by Plaintiff's counsel in another case in which opposing counsel was involved. That fact appears to be uncontested. Plainly, that fact is not sufficient under the rules governing trials in federal court, to put Defendant's counsel on notice that Dr. Becker would be a witness in *this* case. The rules provide standards which, if followed by the parties, preclude the necessity of either party being required to guess who the other might call as an expert witness.

4. It is by no means certain that Dr. Becker's testimony, even if admitted at trial, would be

Plaintiff argues that even if Dr. Becker's testimony is not admissible, that Dr. Almquist's testimony precludes summary judgment, since that witness testified that "in his opinion, based on the plaintiff's representations of his activities, the carpal tunnel syndrome was caused by the plaintiff's performance of his work." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 3). Yet Plaintiff cites to that same segment of Dr. Almquist's testimony set out in this Order, above. Considering that testimony, the Court finds that it is not sufficient to withstand Defendant's Motion for Summary Judgment.

Finally, in oral argument, counsel for Plaintiff argued that there exist in modern industry as a whole, various methods, techniques, and equipment for avoiding or lessening the chances of employees developing carpal tunnel syndrome, and that the Court should consider the "widespread" implementation of such measures in ruling on this Motion. There is no evidence before the Court to this effect, and the Court is not free to take judicial notice of any such facts, even if counsel are correct.

For the reasons set forth, Defendant's Motion for Summary Judgment is GRANTED.

sufficient to enable Plaintiff to survive a motion for judgment as a matter of law at the close of a trial in this matter. *See Aparicio v. Norfolk & Western Railway Co.,* 874 F.Supp. 154 (N.D.Ohio 1994). The declaration filed with the Court appears to be entirely generic in its content, and does not establish that Dr. Becker is familiar with *this* case to any degree.