**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 07 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50187 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00121-SJO-1 |
| v. | |
| TAANSEN FAIRMONT SUMERU, aka Seal A, David Freeston, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50209 |
| Plaintiff - Appellee, | D.C. No. 2:05-cr-00121-SJO-2 |
| v. | |
| JEROME HAROLD HALL, AKA Jeru Harold Hall, AKA Seal B, | |
| Defendant - Appellant. | |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Cir. R. 36-3.

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted August 29, 2011
Pasadena, California

Before: ALARCÓN, O'SCANNLAIN, and SILVERMAN, Circuit Judges.

After a joint trial, a jury convicted Jerome Hall and Taansen Sumeru of seven counts of securities fraud, and aiding and abetting securities fraud, in violation of 15 U.S.C. §§ 77q(a), 77x and 18 U.S.C. § 2; and seven counts of wire fraud, and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2, 1343. Sumeru was also convicted of one count of money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); and two counts of failing to file his income tax returns, in violation of 26 U.S.C. § 7203. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm in all respects.

**I.      There Was Sufficient Evidence For A Rational Jury To Conclude That The Certificates Of Deposit Were Securities.**

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that the certificates of deposit offered and sold by Hall and Sumeru were investment contracts and thus "securities" within the meaning of the Securities Act of 1933, 15 U.S.C. § 77a *et seq*. *See Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (en banc).

It is undisputed that Sattva Bank's investors invested their money in the CDs with the expectation that their profits would be produced by the efforts of Hall and Sumeru. The government also presented sufficient evidence for a rational jury to conclude that there was vertical commonality, and thus a common enterprise, between Sattva Bank's investors, on the one hand, and Hall and Sumeru, on the other hand. The investors' fortunes were "interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 n.7 (9th Cir. 1973). Furthermore, where, as here, "an investor's avoidance of loss depends on the promoter's 'sound management and continued solvency,' a common enterprise exists." *SEC v. Eurobond Exch., Ltd.*, 13 F.3d 1334, 1341 (9th Cir. 1994) (quoting *United States v. Carman*, 577 F.2d 556, 563 (9th Cir. 1978)).

We reject Hall and Sumeru's argument that *Marine Bank v. Weaver*, 455 U.S. 551 (1982), and its progeny require a contrary result. Just because Hall and Sumeru characterized Sattva Bank's products as "CDs" does not mean that they are in fact genuine CDs, or that they are not subject to the Securities Act. "[T]he name given to an instrument is not dispositive." *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 850 (1975). What matters is "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic

inducements held out to the prospect." *Weaver*, 455 U.S. at 556 (internal quotation marks omitted). Every transaction must be examined based on "the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole." *Id.* at 560 n.11. Because there was sufficient evidence for a rational jury to conclude that the CDs offered and sold by Hall and Sumeru were investment contracts, the district court properly denied Hall and Sumeru's motion for judgment of acquittal on the securities fraud counts.[1]

We also reject Hall and Sumeru's argument that the CDs at issue were not subject to the Securities Act under *Morrison v. National Australia Bank Ltd.*, — U.S. —, 130 S. Ct. 2869 (2010). *Morrison* concerned the extraterritorial application of § 10(b) of the Securities Exchange Act of 1934, which prohibits certain fraudulent conduct "in connection with the purchase or sale" of securities. 15 U.S.C. § 78j(b); *Morrison*, 130 S. Ct. at 2881-82. Section 77q(a), by contrast, concerns certain fraudulent conduct "in the *offer* or sale of any securities." 15 U.S.C. § 77q(a) (emphasis added). The "offer" of securities is defined to "include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or

---

[1] Because the government did not rely on a "note" theory at trial, and because there was sufficient evidence that the CDs were investment contracts, we decline to address the government's alternative argument that the CDs offered and sold by Sumeru were notes, and thus securities, subject to the Securities Act.

interest in a security, for value." 15 U.S.C. § 77b(a)(3). Even assuming that *Morrison*'s holding applies to § 77q(a) and prohibits that statute's extraterritorial application, there was sufficient evidence for a rational jury to conclude that Hall and Sumeru made numerous domestic offers of securities by soliciting potential investors in the United States. Both defendants, for example, met with potential investors in Santa Barbara, California and solicited potential investors through the U.S. mail. Given this evidence and the textual difference between § 10(b) of the Exchange Act and § 77q(a), nothing in *Morrison* renders the securities fraud convictions infirm here.

## II.     The District Court Did Not Commit Structural Error or Plain Error In Instructing The Jury On The "Securities" Element Of The Securities Fraud Offense.

When read in context, and considered as a whole, the district court's securities fraud instructions were not plainly erroneous, as they informed the jury of the statutory definition of a security and set forth the correct test for determining whether an instrument qualifies as an investment contract. Furthermore, the government presented "strong and convincing evidence" that the CDs were investment contracts, and thus securities. *United States v. Moreland*, 622 F.3d 1147, 1167 (9th Cir. 2010) (internal quotation marks omitted). Neither Hall nor Sumeru disputed this element, or provided any evidence to the contrary at trial, or

objected to the instruction given. *Cf. United States v. Lacy*, 119 F.3d 742, 750 (9th Cir. 1997).

**III.    The Government's Theory Of Conviction On The Wire Fraud Counts Was Legally Sufficient.**

The government's theory of conviction on the wire fraud counts was not, as Hall and Sumeru contend, legally invalid. The jury was instructed that it could find Hall and Sumeru guilty of wire fraud on the basis of "actual, direct false statements," "half-truths," or "the knowing concealment of facts." At trial, the vast majority of evidence in support of the wire fraud counts involved affirmative, material misrepresentations. The mere fact that the government argued in closing that a few pieces of evidence represented material omissions, without also proving the existence of a trust or fiduciary relationship, does not render the wire fraud convictions infirm. This is so because "even in the absence of a trust relationship, a broker cannot affirmatively tell a misleading half-truth about a material fact to a potential investor." *United States v. Laurienti*, 611 F.3d 530, 541 (9th Cir. 2010). The duty to disclose in such circumstances "arises from the telling of a half-truth, independent of any responsibilities arising from a trust relationship." *Id.* At trial, the government elicited sufficient evidence for a rational jury to conclude that the alleged material omissions were actually "half-truths." For that reason, and

because the jury was instructed on a "half-truth" theory, the government was not required to prove the existence of a trust or fiduciary relationship between the defendants and Sattva Bank's investors. There was no risk, as Hall and Sumeru claim, that the general verdict returned by the jury rested on a legally invalid basis.

## IV. The District Court Did Not Commit Plain Error By Giving A "Deliberate Avoidance" Instruction.

The district court did not plainly err by giving a "deliberate avoidance" instruction. Given the evidence of Hall and Sumeru's claimed investment experience and due diligence, as well as the nature of Sattva Bank's claims and financial products, a jury could rationally infer that if the defendants were not actually aware that the claims they made about the bank's products were false, their ignorance resulted from deliberately avoiding the truth. The circumstances surrounding Sattva Bank's operation, in short, "would have put any reasonable person on notice that there was a 'high probability' that the undisclosed venture was illegal." *United States v. Nicholson*, 677 F.2d 706, 710 (9th Cir. 1982). There was therefore no plain error in giving the instruction.

## V. There Was Sufficient Evidence For A Rational Jury To Conclude That Hall Committed Securities Fraud and Wire Fraud.

The government presented evidence that Hall played a major, active, and integral role in the formation and operation of Sattva Bank. Under his watch,

Sattva made numerous false and material misrepresentations to prospective investors, including that the bank was insured by the International Deposit Indemnity Corporation, that the CDs would reap returns of up to 200 percent, and that the bank traded in "high quality investment grade" instruments. The government also presented evidence that Hall personally made material misrepresentations to investors, gave investors conflicting excuses when Sattva Bank could no longer make good on its scheduled interest payments, and falsely represented that things at the bank "were going very good" after the fraudulent scheme began to unravel. The government also presented an expert witness who testified that Sattva Bank displayed numerous "hallmarks of fraud in its operation." When considered as a whole, this evidence was sufficient for a rational jury to conclude that Hall harbored the requisite fraudulent intent. *See United States v. Lothian*, 976 F.2d 1257, 1267 (9th Cir. 1992); *see also United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (per curiam).

## VI. There Was Sufficient Evidence For A Rational Jury To Conclude That Sumeru Committed Money Laundering Conspiracy.

There was sufficient evidence for a rational jury to conclude that Sumeru conspired to participate in one or more financial transactions involving the "proceeds of some form of unlawful activity." 18 U.S.C. §§ 1956 (a), (h). The

government's charging of Sumeru with securities fraud, wire fraud, and money laundering conspiracy did not, as Sumeru contends, "present a 'merger' problem of the kind that troubled the plurality and concurrence in [*United States v. Santos*, 553 U.S. 507 (2008)]." *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009). The securities fraud counts were primarily premised on the defendants' mailing of promotional materials, CDs, and account statements and notices, and the wire fraud counts were premised on several transfers of funds from banks in California to Sattva Bank's accounts or to accounts controlled by FIBG. The money laundering conspiracy count, by contrast, was premised on Sumeru's agreement and conspiracy to have the proceeds of Sattva Bank's illegal activities transferred to his offshore accounts to fund personal purchases. This conduct was not a "central component of the 'scheme to defraud.'" *Id.* at 815. Nor was it "central to carrying out the scheme's objective of encouraging further investment." *Moreland*, 622 F.3d at 1166. Furthermore, the necessity of the transfers was limited to Sumeru's "personal interest in veiling the sources of his income from public authorities." *United States v. Bush*, 626 F.3d 527, 538 (9th Cir. 2010). Taking such extra lengths to conceal completed criminal conduct "is not central to the solicitations necessary for a Ponzi scheme to continue operating." *Id.* We will

not "endorse a merger rule that would reward criminals for increasing nefarious behavior by taking additional steps to avoid justice." *Id.*

### VII. The District Court Did Not Commit Plain Error In Instructing The Jury On The Money Laundering Conspiracy Count.

The district also did not commit plain error in instructing the jury on the money laundering conspiracy count. First, the court was not required to define "proceeds" as "profits" because the "'merger' problem of the kind that troubled the plurality and concurrence in *Santos*" is not present here, as explained above. *See Van Alstyne*, 584 F.3d at 814. Second, when viewed as a whole, the money-laundering-conspiracy instructions adequately advised the jury of the mental state required for the offense. *See* 18 U.S.C. § 1956(c)(1). Although the court gave a general "knowingly" instruction, it expressly informed the jury that the general definition did not apply for the money-laundering offense. In its specific money-laundering instructions, it set forth the statutory text of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2)(B)(i), both of which include an essential requirement that the defendant know that either the property or funds involved in the transaction represents some form of unlawful activity. The court then instructed the jury that the government was required to prove, beyond a reasonable doubt, that there was "an agreement between two or more persons to commit money

laundering" in contravention of at least one of those two statutes, and that Sumeru "became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it." When considered as a whole, these instructions properly advised the jury of the requisite knowledge for the money-laundering count. Furthermore, there was strong and convincing evidence that Sumeru took pains to conceal Sattva Bank's activities from securities brokers and government regulators and thus actually knew that Sattva Bank's funds represented the proceeds of illegal activity.

### VIII. The District Court Did Not Commit Plain Error In Instructing The Jury On The Failure-To-File Counts.

The district court's instructions on the failure-to-file counts were not plainly erroneous. In instructing the jury that it had to find beyond a reasonable doubt that Sumeru "acted for the purpose of evading his duty under the tax laws and not as the result of accident or negligence," the district court adequately informed the jury of the mental state required for a violation of 26 U.S.C. § 7203. In order to establish willfulness, the government is required to prove "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991). But a defendant cannot act with the purpose of evading his duty under the

tax laws without at least knowing of that duty and intending to violate that duty. There was therefore no plain error in the district court's instructions.

### IX. The District Court Did Not Abuse Its Discretion By Denying Hall's Motion To Sever.

The district court did not abuse its discretion by denying Hall's motion to sever his trial from Sumeru's trial because the joint trial was not "so manifestly prejudicial as to require the trial judge to exercise his discretion in one way, by ordering a separate trial," *United States v. Abushi*, 682 F.2d 1289, 1296 (9th Cir. 1982), and the failure to sever did not "prevent[] [Hall] from obtaining a fair trial," *United States v. Johnson*, 297 F.3d 845, 855 (9th Cir. 2002). Hall and Sumeru's defenses were not mutually antagonistic, the evidence of which Hall complains would have been cross-admissible in separate trials, and any risk of prejudice was cured by the district court's frequent use of limiting instructions before, during, and after the close of evidence at trial.

**AFFIRMED.**